1
2
3
4
5
6
7
8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11                      **SAN FRANCISCO DIVISION**

12

13    NALCO CO.,                          Case No. 13-cv-02727 NC

14              Plaintiff,

**ORDER GRANTING MOTION FOR**
14        v.                             **LEAVE TO FILE AMENDED**
15                                       **ANSWER AND COUNTERCLAIMS**

16    TURNER DESIGNS, INC.,

17              Defendant.               Re: Dkt. No. 24

18

19        This patent infringement suit arises from Turner Designs' sale of several products,

20   including "The Little Dipper," a device that monitors concentrations of chemicals in

21   industrial water systems. Nalco Company, a supplier of various products and services

22   designed to reduce energy, water, and other natural resource consumption, brings suit for

23   induced and contributory infringement of United States Patent No. 6,255,118, entitled

24   "Method for Using an All Solid-State Fluorometer in Industrial Water System

25   Applications." Nalco alleges that Turner provided, and continues to provide, directions,

26   information, and other materials to its customers, which encourage them to use Turner's

27   products in a manner that directly infringes Nalco's patented method. Nalco further alleges

28   that Turner's products are specially designed for use in infringing the '118 patent and have

no substantial non-infringing use.  Turner answered Nalco's complaint on August 15, 2013.

Dkt. No. 9.  Turner now moves for leave to amend its answer and counterclaims pursuant to

Federal Rule of Civil Procedure 15(a)(2).  Nalco opposes the motion solely on the ground

that the proposed amendment would be futile.  Because Turner's proposed amendment

either already alleges sufficient facts to plead inequitable conduct, patent misuse, and

antitrust claims, or may be amended to allege a set of facts that would adequately plead

those claims, the Court finds that the proposed amendment would not be futile.  The Court

therefore grants Turner's motion for leave to amend its answer and counterclaims.

# I. BACKGROUND

## A.   Turner's Motion for Leave to Amend

Turner seeks leave to add an inequitable conduct defense, a patent misuse defense, a

*Walker Process* antitrust counterclaim, and an attempted monopolization counterclaim to its

pleadings.  Dkt. No. 24 at 4.  Turner alleges that Nalco fraudulently procured Patent No.

6,255,118 ("the '118 patent") by failing to disclose Patent No. 4,992,380 ("the '380 patent")

during prosecution of the '118 patent.  *Id.*  Turner contends that if the '380 patent had been

disclosed, the '118 patent would not have issued because the '380 patent anticipates, or at

the very least renders obvious, the '118 patent.  *Id.* at 4, 8.

Turner argues that Nalco's patent is unenforceable under the equitable doctrine of

patent misuse and alleges four facts to support its patent misuse defense.  *Id.* at 8-9.  First,

Nalco asserted its fraudulently procured patent against Turner, the only supplier to Nalco's

competitors.  *Id.* at 9.  Second, in light of the prosecution history and common meaning of

the claim terms, no reasonable person could believe that Turner's products infringed the

'118 patent.  *Id.* at 8.  Third, Nalco sued Turner solely for the purpose of subjecting Turner

to costly litigation expenses.  Dkt. No. 27 at 8-9.  Finally, Nalco expected that the cost of

the litigation would force Turner to discontinue its products, allowing Nalco to monopolize

one hundred percent of the market.  *Id.*  Turner alleges that Nalco is liable for

monopolization and attempted monopolization under § 2 of the Sherman Act for the same

reasons.  Dkt. No. 24 at 9-10.

Turner argues that the Court should grant leave to amend because (1) Nalco will suffer no prejudice, as there is ample time to conduct additional discovery in support of the new defenses and counterclaims, (2) the amendment is timely because the case is in its early stages and the fact discovery cut-off is not until May 2, 2014, (3) the amendment will conserve judicial resources, since the antitrust counterclaims could be brought in a separate action, but the antitrust issues substantially overlap with infringement issues, and (4) the defenses and counterclaims are not futile, as the proposed amendment alleges sufficient facts to support the new claims.  Dkt. No. 24 at 5-7, 10.[1]

**B.    Nalco's Opposition to Turner's Motion for Leave to Amend**

Nalco opposes Turner's motion for leave to amend solely on the ground that the proposed amendment would be futile.  Dkt. No. 25 at 5.  Nalco argues that adding the inequitable conduct defense would be futile because (1) the proposed amendment fails to adequately plead the intent and materiality prongs of inequitable conduct, and (2) the patent alleged not to have been disclosed during patent prosecution was in fact disclosed through the doctrine of incorporation by reference.  *Id.*  Nalco argues that adding the patent misuse and antitrust counterclaims would be futile because they either rely upon proof of inequitable conduct, which Turner fails to adequately plead, or rely on a premature and incorrect construction of the term "cell" in the '118 patent.  *Id.*

**C.    Jurisdiction**

Because this action arises under the patent laws of the United States, this Court has jurisdiction under 28 U.S.C. §§ 1338(a) and 1331.  All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides generally that leave to amend the pleadings before trial should be given freely "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality."  *Eminence Capital, LLC v.*

---

[1] The Court does not address Turner's arguments regarding prejudice, timeliness, and conservation of judicial resources because Nalco challenges the proposed amendment solely on the ground of futility.

*Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks omitted).  "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint."  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citation omitted).

"Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal[.]"  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (citations omitted).  "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  To determine whether a proposed amendment is futile, the Court must consider whether there is a set of factual allegations that, if pleaded, could satisfy the 12(b)(6) and 9(b) pleading standards.  *See In re Fritz Cos. Sec. Litig.*, 282 F. Supp. 2d 1105, 1111 (N.D. Cal. 2003) ("[I]n order to analyze the potential futility of the [proposed third amended complaint], this court must determine if it withstands Rules 12(b)(6) and 9(b), or if it suffers from the same inadequacies as the [second amended complaint].").

To satisfy the 12(b)(6) pleading standard, a plaintiff must plead his claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted) (internal quotation marks omitted).  To plead fraud or mistake under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

# III. DISCUSSION

## A.   Inequitable Conduct

The Federal Circuit's en banc decision in *Therasense* "tighten[ed] the standard[]" for proving inequitable conduct. *Therasense, Inc. v. Becton*, *Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). After *Therasense*, "[t]o prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290. "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference." *Id.* Information is material if "the PTO would not have allowed the claim had it been aware of the undisclosed prior art." *Id.* at 1291. "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Therasense*, 649 F.3d at 1290.

Although *Therasense* raised the bar for proving inequitable conduct on the merits, it did not change the standard for pleading inequitable conduct. *See Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (adopting the *Exergen* standard for determining the sufficiency of pleadings in a post-*Therasense* case); *Human Genome Scis., Inc. v. Genentech, Inc.*, No. 11-cv-06519 MRP, 2011 WL 7461786, at *3 (C.D. Cal. Dec. 9, 2011) (following *Delano Farms*); *Jersey Asparagus Farms, Inc. v. Rutgers Univ.*, 803 F. Supp. 2d 295, 312 (D.N.J. 2011) ("As noted, *Therasense* does not address the initial pleading stage . . . .").

Inequitable conduct must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009). "Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law." *Exergen*, 575 F.3d at 1318. "[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' . . . the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328. To plead the intent

prong of inequitable conduct, the pleading "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29.

Here, Turner's proposed amendment satisfies *Exergen's* "who," "what," "where," "when," and intent requirements for pleading inequitable conduct, but fails to satisfy the "why" requirement.  By alleging that John E. Hoots (the inventor of both the '380 patent and the '118 patent) failed to disclose the '380 patent in the prosecution of the '118 patent, Turner satisfies *Exergen's* "who" and "when" requirements.  Dkt. No. 24-1 at 7, ¶ 37. Turner satisfies the "what" and "where" requirements by "identify[ing] which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found[.]"  *Exergen*, 575 F.3d at 1329.  Turner alleges:

> Each and every element of claim 1 of the '118 patent is disclosed in the '380 patent: '118 claim 1 preamble: "A method for monitoring concentration of chemicals in industrial water systems…" ('380: 1:15-32, 2:63-3:8, 9:67-10:23); '118 claim 1 limitation (a): "providing a solid state fluorometer…" ('380: 15:5-8); '118 claim 1 limitation (a)(i) "a solid state excitation source…" ('380: Id.); '118 claim 1 limitation (a)(ii) "a detector receiving the fluorescence…" ('380: 14:55-15:10, 16:30-39); '118 clam 1 limitation (a)(iii) "a sample chamber which is a cell…" ('380: Fig. 10, 16:67-17:11, 13:26-53); '118 claim l limitation (b) "providing an industrial water system, wherein a chemical treatment or additive has been added…" ('380: Fig. 1, 8:3-29, 12:49-55); '118 claim 1 limitation (c) "using said fluorometer to detect the fluorescence of the fluorescent tracer…" ('380: Figs. 9-10, 8:3-29, 12:18-49, 14:55-15:10); '118 claim 1 limitation (d) "programming said fluorometer…" ('380: Figs. 9-10, 8:3-29, 12:18-49, 14:55-15:10, 21:18-22:340; and '118 claim 1 limitation (e) "controlling dosage of chemical treatments…" ('380: Id., 8:3-11:56).  Thus, every limitation in Claim 1 of the '118 patent is disclosed in the '380 patent.

Dkt. No. 24-1 at 6-7, ¶ 34.  Turner alleges that the '380 patent "anticipates or at the very least renders obvious the '118 claims," *Id.* at 7, ¶ 35, which "explain[s] . . . 'how' an examiner would have used this information in assessing patentability of the claims," *Exergen*, 575 F.3d at 1329-30.

Turner's proposed amendment adequately pleads the intent prong of inequitable

conduct by alleging facts that allow the Court to "reasonably infer that a specific individual (1) knew of the withheld material information . . . and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29.  To show knowledge of the withheld material information, Turner alleges that the '380 and '118 patents had a common inventor, John E. Hoots.  Dkt. No. 24-1 at 7, ¶ 37.  Because Hoots was a named inventor on both patents, the Court may reasonably infer that Hoots knew not only "that [the] reference existed, [but] also knew of the specific material *information* contained in that reference."  *Exergen*, 575 F.3d at 1330; *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 749 F. Supp. 2d 892, 905 (W.D. Wis. 2010) (finding that a person's knowledge of disclosures within a patent "can be inferred reasonably from the fact that he was a named inventor on the . . . patent").

Further, a named inventor has a duty to disclose material information to the PTO, so Turner's allegation that Hoots withheld the reference adequately pleads that a "specific individual *associated with* the filing or prosecution of the application" was responsible for the deceptive conduct.  *Exergen*, 575 F.3d at 1329 (emphasis added); 37 C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section."); 37 C.F.R. § 1.56(c) ("Individuals associated with the filing or prosecution of a patent application within the meaning of this section are: (1) Each inventor named in the application . . . .").  By alleging that Hoots withheld material information, Turner adequately identifies a "specific individual" associated with the prosecution of the '118 patent who knew of the withheld information.  *Exergen*, 575 F.3d at 1328-29; *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 898 (N.D. Cal. 2011) (holding that defendant satisfied the "who" pleading requirement by identifying the patent inventor as a person associated with the prosecution who was responsible for the deceptive conduct).

Although Turner alleges deceptive intent on information and belief, the Court finds that Turner adequately states the factual basis for alleging intent.  "Pleading on 'information

and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330.  Turner alleges that Hoots and Nalco (1) knew that the '380 patent deterred competitive entry into the market, (2) knew that the '380 patent would expire on October 14, 2008, (3) knew that when the '380 patent expired, competitive entry into the market was a virtual certainty, and (4) fraudulently concealed the '380 patent during prosecution of the '118 patent for the purpose of obtaining a new patent that would allow them to deter competitive entry into the market for an additional eight years after the '380 patent expired. Dkt. No. 27 at 4.  The Court finds that Turner's factual allegations regarding the expiration date of the '380 patent and the importance of the '380 patent to deterring competitive entry into the market reasonably support an allegation of deceptive intent.  These facts, together with the fact of common inventorship, are sufficient to plead the intent prong of inequitable conduct under rule 9(b).

The Court is not persuaded by Nalco's argument that Nalco did in fact disclose the '380 patent during prosecution of the '118 patent. Dkt. No. 25 at 11.  Nalco argues that, because the '118 patent incorporates U.S. Patent No. 5,171,450 ("the '450 patent") by reference, and the '450 patent incorporates the '380 patent by reference, the '118 patent therefore discloses the '380 patent. *Id.*  "To incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents." *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006) (quoting *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000)).  "Whether and to what extent material has been incorporated by reference into a host document is a question of law." *Cook*, 460 F.3d at 1376.  "In making that determination, 'the standard of one reasonably skilled in the art should be used to determine whether the host document describes the material to be incorporated by reference with sufficient particularity.'" *Zenon Envtl., Inc. v. U.S. Filter Corp.*, 506 F.3d 1370, 1378-79 (Fed. Cir. 2007) (quoting *Advanced Display*, 212 F.3d at 1282).

1
2
3

The '118 patent does not describe the material information in the '380 patent with sufficient particularity to incorporate it by reference.  The sole disclosure of the '450 patent in the '118 patent is as follows:

4
5
6
7

> [T]he solid-state fluorometer instruments 10 and 200 may be used in applications including process control and monitoring and determination of treatment dosage via direct monitoring of fluorescent tagged polymers, particularly in specific chemical applications.  The disclosure of which is incorporated herein by reference, U.S. Pat. No. 5,171,450 discloses the application of fluorescent tagged polymers.

8
9
10
11
12
13
14
15
16
17
18
19
20

Dkt. No. 26-3 at 18 (U.S. Pat. No. 6,255,118, 9:57-64).  Nalco does not explain how this reference to the '450 patent "identif[ies] with detailed particularity [the] specific material" from the '380 patent that Turner alleges is material to the patentability of the '118 patent.  *Cook*, 460 F.3d at 1376.  The "detailed particularity" requirement is not satisfied by the fact that the '450 patent incorporates the '380 patent by reference[2] because it is the "host document" (the '118 patent), not the referenced document (the '450 patent), that must identify the specific material incorporated.  *See Zenon*, 506 F.3d at 1378-80.  Because the '118 patent does not even mention the '380 patent, let alone "identify with detailed particularity what specific material [from the '380 patent it] incorporates and clearly indicate where that material is found[,]" the '118 patent does not incorporate the '380 patent by reference.  *Cook*, 460 F.3d at 1376; *see Zenon*, 506 F.3d at 1378-80.  Nalco's argument that it did disclose the '380 patent in the prosecution of the '118 patent is therefore unpersuasive.

21
22
23
24

However, Turner fails to "explain . . . 'why' the withheld information is material and not cumulative[.]" *Exergen*, 575 F.3d at 1329.  Information is material if "the PTO would not have allowed the claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291.  "It is well-established, however, that information is not material if it is

25
26
27
28

---

[2] The '450 lists the '380 patent in the "References Cited" section. Dkt. No. 26-5 at 2 (U.S. Pat. No. 5,171,450). The only references to the '380 patent in the specification of the '450 patent are as follows: "The emissivity value can be converted to a DC voltage analog as disclosed in pending (allowed) application Ser. No. 258,131, filed Oct. 14, 1988, now U.S. Pat. No. 4,992,380. . . . The instrumentation for continuous monitoring is presented in FIG. 2, schematically on an exaggerated scale, the same as in U.S. Pat. No. 4,992,380." U.S. Pat. No. 5,171,450, 5:9-12, 6:12-14.

cumulative of other information already disclosed to the PTO." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1367 (Fed. Cir. 2008). Turner must therefore plead facts with particularity to show that the '380 patent is not cumulative of other information disclosed during prosecution of the '118 patent. *Exergen*, 575 F.3d at 1329-30; *Oracle*, 807 F. Supp. 2d at 899 (finding that defendant "ha[d] not properly pled the 'why' and 'how' of [plaintiff's] alleged failure to disclose prior art" because "[defendant did] not allege any facts to support an inference that the information allegedly withheld from the PTO is not cumulative of other information previously disclosed to the examiner[.]"); *Aevoe Corp. v. AE Tech. Co., LTD.*, No. 12-cv-00053 GMN, 2013 WL 876036, at *8 (D. Nev. Mar. 7, 2013) ("[T]o satisfy the 'why' component, Defendants' counterclaim must also plead with particularity that the withheld information is not cumulative of the information actually disclosed during prosecution."). Absent from Turner's proposed amendment and reply brief are any facts showing that the '380 patent was not cumulative of other references before the PTO. Dkt. Nos. 24-1, 27. Turner's proposed amendment is therefore inadequate to plead inequitable conduct under Rule 9(b) as it stands.

Although Turner's proposed amendment is currently inadequate to plead inequitable conduct, the amendment is not futile because some "set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). The Court therefore grants Turner leave to amend its answer to add the inequitable conduct defense if Turner can allege facts with particularity that would show, if true, that the '380 patent was not cumulative of information already before the PTO during prosecution of the '118 patent.

**B.   Monopolization**

"[T]he enforcement of a patent procured by fraud on the Patent Office may be violative of [§] 2 of the Sherman Act provided the other elements necessary to a [§] 2 case are present." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965); *see also Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998) ("A patentee who brings an infringement suit may be subject to antitrust

1    liability [under § 2 of the Sherman Act] if the alleged infringer (the antitrust plaintiff)

2    proves . . . that the asserted patent was obtained through knowing and willful fraud within

3    the meaning of *Walker Process*[.]").  "To establish the antitrust portion of a *Walker Process*

4    allegation, a plaintiff must show that the defendant held monopoly power in the relevant

5    market and willfully acquired or maintained that power by anticompetitive means." *Delano*

6    *Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1351 (Fed. Cir. 2011).[3]

7         **i.    *Walker Process* Fraud**

8         Before *Therasense* tightened the standard for proving inequitable conduct, the

9    Federal Circuit held that proving inequitable conduct was insufficient to prove *Walker*

10   *Process* fraud.  *Nobelpharma*, 141 F.3d at 1070 ("Simply put, *Walker Process* fraud is a

11   more serious offense than inequitable conduct.").  A showing of *Walker Process* fraud

12   requires "independent and clear evidence of deceptive intent together with a clear showing

13   of reliance, i.e., that the patent would not have issued but for the misrepresentation or

14   omission." *Nobelpharma*, 141 F.3d at 1071.  After *Therasense*, the standard for proving

15   inequitable conduct is arguably the same as the standard for proving *Walker Process* fraud.

16   *Therasense*, 649 F.3d at 1290-91 (requiring clear and convincing evidence of both "*a*

17   *deliberate decision* to withhold a *known* material reference" and "but-for materiality" of the

18   withheld reference to prove inequitable conduct); *Cornucopia Prods., LLC v. Dyson, Inc.*,

19   881 F. Supp. 2d 1086, 1099 n.4 (D. Ariz. 2012) ("*Therasense* discusses inequitable conduct,

20   which—before *Therasense*—operated on a similar but looser standard than *Walker Process*

21   fraud.  *Therasense*, however, raised inequitable conduct to match the standard for *Walker*

22   *Process* claims based on omission.").  However, because the Federal Circuit has not

23   overruled its prior decisions holding that inequitable conduct is insufficient to prove *Walker*

24   *Process* fraud, this Court analyzes Turner's proposed amendment under the pre-*Therasense*

---

25   [3] Federal Circuit law governs whether a patent was obtained by defrauding the PTO. *Nobelpharma*,
26   141 F.3d at 1068 ("[W]hether conduct in procuring or enforcing a patent is sufficient to strip a
     patentee of its immunity from the antitrust laws is to be decided as a question of Federal Circuit
27   law.").  Ninth Circuit law governs the other antitrust elements of a *Walker Process* claim.  *Id.*
     ("[W]e will continue to apply the law of the appropriate regional circuit to issues involving other
28   elements of antitrust law such as relevant market, market power, damages, etc. . . . .").

1    Federal Circuit standard.

2        To adequately plead *Walker Process* fraud, Turner must allege sufficient facts from

3    which the Court can infer that:

4        (1) the patent at issue was procured by knowing or willful fraud on the
     USPTO; (2) the defendant was aware of the fraud when enforcing the patent;
5        (3) there is independent evidence of a clear intent to deceive the examiner;
     [and] (4) there is unambiguous evidence of reliance, *i.e.*, that the patent would
6        not have issued but for the misrepresentation or omission . . . .

7    *Ritz Camera & Image, LLC v. SanDisk Corp.*, 772 F. Supp. 2d 1100, 1106 (N.D. Cal. 2011)

8    *aff'd*, 700 F.3d 503 (Fed. Cir. 2012) (citing *Nobelpharma*, 141 F.3d at 1068-71).  Because a

9    *Walker Process* claim is a fraud-based claim, Turner must plead facts with particularity

10   under Federal Rule of Civil Procedure 9(b).  *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d

11   308, 316 (N.D. Cal. 2007) ("Like all fraud-based claims, *Walker Process* allegations are

12   subject to the pleading requirements of Fed.R.Civ.P. 9(b)." (internal quotation marks

13   omitted)).

14       The Court finds that Turner's proposed amendment adequately pleads knowing and

15   willful fraud, intent to deceive the PTO, and awareness of the fraud when enforcing the

16   '118 patent, but does not allege sufficient facts to plead PTO reliance.  Turner alleges that

17   the '118 patent and '380 patent have a common inventor, John E. Hoots, and a common

18   assignee, Nalco, but that Hoots did not disclose the '380 patent during prosecution of the

19   '118 patent.  Dkt. No. 24-1 at 13, ¶24.  Turner further alleges that Nalco and Hoots knew

20   that the '380 patent deterred competitive entry into the market and that competitive entry

21   would be a virtual certainty once the '380 patent expired on October 14, 2008 unless the

22   '118 patent issued.  Dkt. No. 27 at 4.  Finally, Turner alleges that Hoots and Nalco

23   concealed the '380 patent in the prosecution of the '118 patent because they believed the

24   disclosure of the '380 patent would prevent issuance of the '118 patent, and Hoots, as a key

25   employee of Nalco, would personally benefit from Nalco's extended monopoly if the '118

26   patent issued.  *Id.* at 3-4.  For the purposes of pleading *Walker Process* fraud, the Court can

27   reasonably infer from these facts that Hoots, who had a duty to disclose material

28   information contained in the '380 patent to the PTO, knowingly, willfully, and intentionally

deceived the PTO during prosecution of the '118 patent.  Further, the Court can reasonably infer that Nalco, who employs Hoots and owns both the '380 and '118 patents, knew about the fraud when it sought to enforce the '118 patent against Turner.

Turner's proposed amendment, however, does not adequately allege that the PTO would not have issued the '118 patent but-for Hoots's failure to disclose the '380 patent. Turner identifies where in the '380 patent each element of the '118 patent can allegedly be found, which explains why the '380 patent might be material to the patentability of the '118 patent. Dkt. No. 24-1 at 12, ¶ 21.  However, failure to disclose a reference that is cumulative of information already disclosed to the PTO cannot be a but-for cause of issuance. *Star Scientific*, 537 F.3d at 1367.  Because Turner does not allege any facts from which the Court can reasonably infer that the '380 patent is not cumulative of information already disclosed to the PTO, Turner's proposed amendment fails to plead "that the patent would not have issued but for the misrepresentation or omission[.]" *Ritz Camera & Image*, 772 F. Supp. 2d at 1106.  However, because Nalco has not persuaded the Court that "no set of facts can be proved under the amendment to the pleadings that would" adequately plead but-for materiality of the omission, the Court finds that amendment is not futile. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

### ii.    *Walker Process* **Antitrust Elements**

Turner's proposed amendment alleges sufficient facts to plead the antitrust elements of a *Walker Process* claim.  "In order to state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.'  That is, the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008).  To adequately plead the relevant market, "the relevant market must be a product market" and "the market must encompass the product at issue as well as all economic substitutes for the product." *Id.* at 1045.  In addition, the plaintiff must allege facts from which the court can reasonably infer that the defendant "willfully acquired or maintained [monopoly] power by anticompetitive means." *Delano Farms*, 655 F.3d at

1   1351.

2   Turner's proposed amendment adequately pleads that a relevant market exists and

3   that Nalco possesses market power within that market.  Turner alleges that the relevant

4   market is the United States national market "for systems and chemicals used in monitoring

5   concentrations of chemicals in industrial water systems using fluorometers" and that

6   Turner's allegedly infringing product, the Little Dipper, is a product within the relevant

7   market.  Dkt. No. 24-1 at 14, ¶¶ 29-30; Dkt. No. 27 at 8.  Turner further alleges that "Nalco

8   has a monopoly in the Relevant Market as evidenced by its 90% share of the Relevant

9   Market."  Dkt. No. 24-1 at 14, ¶¶ 29-30.  Turner's market definition adequately alleges that

10  a market exists for systems and chemicals used for monitoring chemicals in water systems.

11  Further, by alleging that Nalco has a 90% market share in the relevant market, Turner

12  alleges sufficient facts to plead Nalco's market power.  *See Ritz Camera & Image, LLC v.*

13  *SanDisk Corp.*, 772 F. Supp. 2d 1100, 1106-07 (N.D. Cal. 2011) *aff'd*, 700 F.3d 503 (Fed.

14  Cir. 2012) (finding that plaintiff adequately pled a market definition and market power by

15  alleging that "[d]efendants possess monopoly power within the market for raw and finished

16  NAND flash memory products").

17  Turner also alleges sufficient facts to plead willful acquisition or maintenance of

18  monopoly power through anticompetitive means.  Turner alleges that, in order to obtain and

19  maintain its monopoly in the relevant market, Nalco both asserted its "fraudulently procured

20  '118 patent against the only supplier (Turner) to its competitors in the Relevant Market"

21  and asserted its patent "against a product [Turner's product] that no reasonable person could

22  believe infringes the patent."  Dkt. No. 24-1 at 15, ¶ 31.  Turner further alleges that Nalco

23  sought to subject Turner to expensive and baseless litigation in order to force Turner to

24  discontinue its product and exit the market rather than defend the suit.  Dkt. No. 27 at 8.  If

25  Nalco is successful in forcing Turner out of the market, Turner alleges that Nalco would

26  have one hundred percent of the market, rather than merely ninety percent.  *Id.* at 9.  The

27  Court finds that Turner's allegations regarding enforcement of a fraudulently obtained

28  patent against a product that no reasonable person could believe infringes in order to force

Nalco's only competitor out of the market adequately alleges the maintenance of monopoly power through anticompetitive means. *Ritz Camera & Image*, 772 F. Supp. 2d at 1110 (N.D. Cal. 2011) (finding that plaintiff's allegation "that after fraudulently procuring the . . . patents, [d]efendants sought to enforce the patents through baseless infringement actions that caused [defendant's largest competitor] to exit the market" was sufficient to plead a causal antitrust injury).

Because Turner's proposed amendment adequately pleads the antitrust elements of a § 2 violation and the Court is not persuaded that Turner cannot allege a set of facts to properly plead the fraud elements, the Court grants Turner leave to add the antitrust counterclaim (the proposed Third Counterclaim) if it can allege sufficient facts to support a reasonable inference that the '380 patent was not cumulative of other information disclosed to the PTO during prosecution of the '118 patent.

## C.    Attempted Monopolization

Turner's proposed amendment adequately pleads attempt to monopolize. "[T]o state a claim for attempted monopolization, the plaintiff must allege facts that, if true, will prove: (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 506 (9th Cir. 2010) (internal quotation marks omitted). "An attempted monopolization claim also requires a showing of anticompetitive injury." *Digital Sun v. The Toro Co.*, No. 10-cv-04567 LHK, 2011 WL 1044502, at *4 (N.D. Cal. Mar. 22, 2011). An antitrust injury consists of "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999). The antitrust laws were intended "to assure customers the benefits of price competition, and . . . [to] protect[] the economic freedom of participants in the relevant market." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 538 (1983); *see also Am. Ad Mgmt.*, 190 F.3d at 1057.

1    Turner adequately pleads anticompetitive conduct with specific intent to monopolize.

2   Turner alleges that "Nalco has asserted the [fraudulently procured] '118 patent against a

3   product that no reasonable person could believe was infringed." Dkt. No. 24-1 at 13-14, ¶¶

4   20, 25-28.  Turner alleges that Nalco intended and expected Turner to discontinue its

5   product and exit the market rather than defend a baseless lawsuit, regardless of the merits,

6   as Nalco believed that Turner did not have sufficient revenues from sale of its product to

7   engage in costly litigation. Dkt. No. 27 at 8.  Turner further alleges that Nalco has

8   threatened Turner's customers with lawsuits if they do not discontinue purchasing Turner's

9   product. *Id.* at 9.  If Nalco is successful in forcing Turner out of the market by engaging in

10  the litigation process, Turner alleges that Nalco will have one hundred percent of the

11  market, rather than merely ninety percent of the market. *Id.*  At the pleading stage, such

12  allegations are sufficient to plead anticompetitive conduct with specific intent to

13  monopolize. *See Ritz Camera & Image*, 772 F. Supp. 2d at 1110 (finding that plaintiff

14  adequately pled anticompetitive conduct and antitrust injury where defendant allegedly

15  asserted patents procured by fraud against competitor to get settlement agreement forcing

16  competitor to exit the market); *see also Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d

17  1028, 1035 (C.D. Cal. 2007) (finding that defendant adequately pled intent to destroy

18  competition by alleging that plaintiff harassed defendant's customers and filed baseless

19  lawsuits).

20    Turner adequately alleges a dangerous probability of success.  Turner alleges that

21  Nalco currently has ninety percent of the relevant market and that Nalco will have one

22  hundred percent of the market if it succeeds in forcing Turner's product out of the market

23  by subjecting Turner to baseless litigation. Dkt. No. 27 at 9.  Such allegations are sufficient

24  to plead a dangerous probability of success. *See Actividentity Corp. v. Intercede Grp. PLC*,

25  No. 08-cv-04577 VRW, 2009 WL 8674284, at *4 (N.D. Cal. Sept. 11, 2009) (finding that

26  defendant adequately stated an attempted monopolization claim by alleging that plaintiff

27  had more than fifty percent of the market and would gain market share through use of its

28  fraudulently procured patent).

1    Turner's proposed amendment also alleges sufficient facts to plead an antitrust

2 injury.  Turner adequately pleads unlawful conduct by alleging that Nalco asserted a patent

3 that no reasonable person would believe was infringed and that was fraudulently procured.

4 Dkt. No. 24-1 at 12-14, ¶¶ 20, 25-28.  Turner adequately pleads an injury caused by

5 plaintiff's conduct by alleging that Nalco has threatened Turner's customers with lawsuits if

6 they do not discontinue purchasing Turner's product and has subjected Turner to baseless

7 litigation, the cost of which may force them out of the market.  *Id.*; Dkt. No. 27 at 8-9.

8 Turner's proposed amendment adequately pleads that the injury flowed from that which

9 makes the conduct unlawful by alleging that the injury is caused by the baseless and

10 unlawful litigation.  Dkt. No. 24-1 at 12-14, ¶¶ 20, 25-28.  Turner's proposed amendment

11 adequately pleads that the injury—being forced to engage in costly litigation that may force

12 Turner to discontinue its product and cede its ten percent market share to Nalco—is the type

13 of anticompetitive injury that the antitrust laws were intended to prevent.  Dkt. No. 24-1 at

14 14-15, ¶¶ 29-30; Dkt. No. 27 at 8-9.  The Court therefore finds that Turner's proposed

15 amendment suffices to allege an antitrust injury.

16    Because Turner's proposed amendment alleges sufficient factual content to state a

17 claim for attempted monopolization, the Court finds that the amendment is not futile.  The

18 Court therefore grants Turner leave to amend its answer and add the attempted

19 monopolization counterclaim.

20 **D.    Patent Misuse**

21    "Patent misuse is an equitable defense to patent infringement."  *U.S. Philips Corp. v.*

22 *Int'l Trade Comm'n*, 424 F.3d 1179, 1184 (Fed. Cir. 2005).  "The purpose of the patent

23 misuse defense [is] to prevent a patentee from using the patent to obtain market benefit

24 beyond that which inheres in the statutory patent right."  *Id.* (internal quotation marks

25 omitted) (citations omitted).  "Patent misuse is viewed as a broader wrong than antitrust

26 violation because of the economic power that may be derived from the patentee's right to

27 exclude."  *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998).  "Thus

28 misuse may arise when the conditions of antitrust violation are not met."  *C.R. Bard*, 157

F.3d at 1372.  "The 'key inquiry is whether . . . the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect.'"  *U.S. Philips*, 424 F.3d at 1184 (quoting *C.R. Bard*, 157 F.3d at 1372));  *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) ("[W]e have characterized patent misuse as the patentee's act of impermissibly broaden[ing] the physical or temporal scope of the patent grant with anticompetitive effect." (internal quotation marks omitted)).  A plaintiff's conduct "is reasonably within the patent grant" if "it relates to subject matter within the scope of the patent claims . . . ."  *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997).

Although the Federal Circuit has not given clear guidance as to whether a patent misuse defense can be premised on patent enforcement, the Court follows the trend among district courts allowing such a defense to survive a motion to dismiss so long as the defendant can allege facts to plead "bad faith and improper purpose in bringing the suit[.]" *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1558 (Fed. Cir. 1995).[4]  "[Because] patents are cloaked in a presumption of validity, a patent

[4] *See, e.g.*, *Reid-Ashman Mfg, Inc. v. Swanson Semiconductor Serv., L.L.C.*, No. 06-cv-04693 JCS, 2007 WL 1394427, at * 7 (N.D. Cal. May 10, 2007) (holding that defendant adequately pled patent misuse premised on patent enforcement because defendant alleged sufficient facts to show that the lawsuit was brought in bad faith and was objectively baseless); *Semiconductor Energy Lab. Co. Ltd. v. Chi Mei Optoelectronics Corp.*, 531 F. Supp. 2d 1084, 1101 (N.D. Cal. 2007) (dismissing patent misuse defense because defendant alleged insufficient facts to plead bad faith); *Rego-Fix AG v. Techniks, Inc.*, No. 1:10-CV-1188-JMS-TAB, 2011 WL 471370, at * 2 (S.D. Ind. Feb. 2, 2011) (same); *Patent Category Corp. v. Worldwide Creations*, No. CV 06-7560RGKFFMX, 2007 WL 2667428, at * 3, 5 (C.D. Cal. May 7, 2007) (same); *Electro Source, LLC v. Nyko Technologies, Inc.*, No. CV 01-10825 DT(BQRX), 2002 WL 34536682, at *12 (C.D. Cal. Apr. 15, 2002) (denying motion to dismiss patent misuse defense based on inequitable conduct); *Advanced Cardivascular Sys., Inc. v. Medtronic, Inc.*, 35 Fed. R. Serv. 3d 318, at *13 (N.D. Cal. 1996) (dismissing patent misuse claim because defendant alleged insufficient facts to plead bad faith in the form of inequitable conduct); *VDF FutureCeuticals, Inc. v. Sandwich Isles Trading Co., Inc.*, No. CIV. 11-00288 ACK, 2011 WL 6820122, at *7-8 (D. Haw. Dec. 27, 2011) (same); *Applera Corp. v. Michigan Diagnostics, LLC*, 594 F. Supp. 2d 150, 163-64 (D. Mass. 2009) (same); *but see C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998) ("It is not patent misuse to bring suit to enforce patent rights not fraudulently obtained . . . ."); *Pace Int'l, LLC v. Indus. Ventilation, Inc.*, No. C08-1822RSL, 2009 WL 2460999, at *1 (W.D. Wash. Aug. 6, 2009) (interpreting *C.R. Bard* to foreclose a patent misuse defense premised on bad faith litigation); *see also IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 1354, 1358 (S.D. Fla. 2010) (following *Pace International's* interpretation of *C.R. Bard*).

infringement suit is presumed to be brought in good faith." *Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1577 (Fed. Cir. 1990); *see also* 35 U.S.C. § 271(d) ("No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having . . . sought to enforce his patent rights against infringement or contributory infringement . . . ."); *Semiconductor Energy Lab*, 531 F. Supp. 2d at 1101 ("Because a patent infringement suit is presumed to be brought in good faith, [defendant] must present evidence of bad faith or improper purpose in order to establish patent misuse based on patent enforcement." (internal quotation marks omitted)).  A lawsuit is brought in bad faith only if "the lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).  "A purpose is improper if its goal is not to win a favorable judgment, but to harass a competitor and deter others from competition, by engaging the litigation process itself, regardless of the outcome." *Glaverbel*, 45 F.3d at 1558 (citing *Prof'l Real Estate*, 508 U.S. at 60).  To plead patent misuse, therefore, Turner must plead facts to support a reasonable inference that Nalco (1) "[acted with] bad faith and improper purpose in bringing the suit," *Glaverbel*, 45 F.3d at 1558, and (2) "impermissibly broadened the scope of the patent grant with anticompetitive effect[,]" *U.S. Philips*, 424 F.3d at 1184.  *See Raines v. Switch Mfg.*, No. 96-cv-02648 DLJ, 1997 WL 578547, at *4 (N.D. Cal. July 28, 1997) ("Defendant must state how plaintiff has attempted to overbroadly and impermissibly construe its patent such as to cause an anticompetitive effect, and defendant must provide some factual basis for the allegation that plaintiff knew the patent was invalid or unenforceable when plaintiff filed the present action." (internal quotation marks omitted)).

### i.    Bad Faith

Turner's proposed amendment provides two grounds for alleging bad faith.  First, Turner alleges that Nalco engaged in inequitable conduct in the prosecution of the '118 patent.  Dkt. No. 24-1, at 7-8, ¶¶ 38-42.  Second, Turner alleges that no reasonable person

1  could believe that Turner's product infringed the '118 patent because no part of Turner's

2  product corresponds to the claim limitation in the '118 patent that requires "a sample

3  chamber which is a cell." Dkt. No. 24-1 at 8-10, ¶¶ 43-46.

4      Insofar as Turner's allegation of bad faith depends upon an allegation of inequitable

5  conduct, the Court finds that the proposed amendment is insufficient to plead bad faith. *See*

6  *VDF FutureCeuticals, Inc. v. Sandwich Isles Trading Co., Inc.*, No. CIV. 11-00288 ACK,

7  2011 WL 6820122, at *7 (D. Haw. Dec. 27, 2011). As discussed above, Turner's proposed

8  amendment fails to adequately plead inequitable conduct because a factual basis for

9  showing that the '380 patent was not cumulative of other information submitted to the PTO

10  during prosecution of the '118 patent is lacking.

11     However, Turner's proposed amendment adequately pleads a separate and

12  independent factual basis for asserting bad faith by alleging that the '118 patent's "cell"

13  limitation cannot reasonably be construed to cover Turner's product. Dkt. No. 24-1, at 8-9,

14  ¶ 43. Turner alleges that a person of skill in the art would understand "a sample chamber

15  which is a cell" to mean "a specialized transparent enclosure used to facilitate

16  measurement." *Id.* Turner's proposed amendment identifies both intrinsic and extrinsic

17  evidence to support its construction of the claim limitation. First, Turner alleges that "the

18  '118 patent teaches, but abandoned [during prosecution], a cell-less abandoned embodiment

19  'constructed with a probe that can conveniently be inserted directly into a sample or sample

20  stream' . . . . which actually describes [Turner's product.]" *Id.* at 8-9, ¶¶ 43-44. Second,

21  Turner contends that the '380 patent supports the "transparent enclosure" construction by

22  stating, "[t]he flow cell is transparent to untraviolet light . . . ." *Id.* Because Nalco's

23  infringement contentions claim that "a sample chamber which is a cell" corresponds to a

24  non-transparent, black, plastic tee in Turner's product, Turner alleges that no reasonable

25  person could believe that Turner's product infringed the '118 patent. *Id.* at 8-9, ¶¶ 43, 45.

26  Although these allegations do not prove that no reasonable person could believe that

27  Turner's product infringes the '118 patent, they are sufficient to plead bad faith. Turner's

28  proposed amendment provides a factual basis from which the Court can reasonably infer

that no reasonable person could believe that Turner's product infringes the '118 patent and that the lawsuit is therefore "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate*, 508 U.S. at 60.

Nalco argues that "a party cannot bring patent misuse or antitrust claims based solely on disputed claim construction issues[,]" citing *Breville Pty Ltd. v. Storebound LLC*, No. 12-cv-01783 JST, 2013 WL 1758742, at *8 (N.D. Cal. Apr. 24, 2013). Dkt. No. 25 at 15. *Breville*, however, does not stand for that proposition. Defendant in *Breville* alleged that "[plaintiff's] infringement claim [was] 'frivolous' because the [patent in suit] disclose[d] a feed tube having the same diameter as the cutting disk, while in [defendant's] juicer the disc extend[ed] beyond the diameter of the feeding term." *Breville*, 2013 WL 1758742, at *8. The Court dismissed defendant's sham litigation counterclaim because "an allegation that a single claim is objectively baseless does not bring . . . [the] filing of the entire complaint within the sham exception." *Id.* (internal quotation marks omitted).

Plaintiff in *Breville*, unlike Nalco in this case, alleged that defendant infringed two of its patents. *Id.* at *1. When multiple patents are asserted against a defendant, a single claim construction dispute with respect to a single patent-in-suit is insufficient to bring the *entire* lawsuit within the sham exception. *Id.* at *8. However, when there is a single patent-in-suit, as is the case here, there is no reason that a disputed claim term could not be the basis of a patent misuse claim. *Breville* does not recommend a contrary result.

To the extent that the *Breville* Court dismissed the counterclaim because it could not "conclude" from the pleadings that the infringement claim was objectively meritless, this Court declines to follow *Breville*. *Id.* On a motion for leave to amend, the Court need only find that Turner can allege some set of facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Thus, the mere fact that Turner's patent misuse claim depends upon the construction of a claim limitation does not render the proposed amendment futile. *See, e.g.*, *Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1037 (C.D. Cal. 2007) (denying motion to dismiss sham litigation antitrust claims premised on a disputed claim

term issue because "the Court cannot rule out the possibility that the claim construction arguments advocated by Catch Curve are objectively unreasonable [before construing the claims]").  Turner's factual allegations are sufficient at the pleading stage to allege that Nalco acted in bad faith by asserting its patent against Turner's product.

### ii.    Improper Purpose

Turner's proposed amendment adequately pleads improper purpose.  Turner alleges that Nalco has ninety percent of the national market (the relevant market) and that Turner is the only supplier to Nalco's competitors in the market.  Dkt. No. 24-1 at 10, ¶¶ 47-48. Turner further alleges that its revenue is one percent of Nalco's revenue, that Nalco knew Turner has insufficient economic resources to defend the lawsuit regardless of the merits of Nalco's claims, and that Nalco sent Turner's customers copies of the complaint and threatened them with lawsuits, expecting that Turner's customers would stop purchasing Turner's products.  Dkt. No. 27 at 8-9.  If Nalco is successful in forcing Turner out of the market through litigation, Turner alleges that Nalco would have one hundred percent of the market, rather than merely ninety percent.  *Id.* at 9.  Based on Turner's factual allegations regarding revenue, market share, and the likely consequence of subjecting Turner and its customers to costly litigation, the court can reasonably infer that Nalco's goal in suing Turner "is not to win a favorable judgment, but to harass a competitor and deter others from competition, by engaging the litigation process itself, regardless of the outcome." *Glaverbel*, 45 F.3d at 1558.  Turner's allegations are therefore sufficient to plead improper purpose.

### iii.    Impermissibly Broadening the Scope of the Patent Grant

Turner's proposed amendment adequately alleges that Nalco "impermissibly broadened the scope of the patent grant with anticompetitive effect." *U.S. Philips*, 424 F.3d at 1184.  If a plaintiff's conduct "is reasonably within the patent grant, i.e., [if] it relates to subject matter within the scope of the patent claims . . . .[the conduct] does not have the effect of broadening the scope of the patent claims and thus cannot constitute patent misuse." *Va. Panel*, 133 F.3d at 869 (internal quotation marks omitted).  To show that

Nalco has broadened the scope of its patent grant, Turner alleges that Nalco has "assert[ed] the '118 patent against a product that no reasonable person could believe was infringed" and that Nalco has threatened to sue Turner's customers for use of that product.  Dkt. No. 24-1 a t8-9, ¶ 43; Dkt. No. 27 at 9.

Although "[a] patentee that has a good faith belief that its patents are being infringed" does not commit patent misuse by notifying potential infringers of their infringement and threatening to sue, *Va. Panel*, 133 F.3d at 869, Turner's allegations of bad faith litigation suffice to allege that Nalco's conduct impermissibly broadened the scope of the patent grant.  The scope of the patent grant is defined by § 154(a) of the Patent Act:

> Every patent shall contain a short title of the invention and a grant to the patentee, his heirs or assigns, of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States, and, if the invention is a process, of the right to exclude others from using, offering for sale or selling throughout the United States, or importing into the United States, products made by that process, referring to the specification for the particulars thereof.

35 U.S.C. § 154(a); *see Zoltek Corp. v. United States*, 672 F.3d 1309, 1323 (Fed. Cir. 2012).  The patent grant therefore gives a patentee the right to prohibit others from infringing the patented invention.  "To prove infringement, the plaintiff . . . [must] show the presence of every element or its equivalent in the accused device."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011).  By alleging that no aspect of Turner's product could possibly correspond to the '118 patent's "cell" limitation, and that no reasonable person could believe that Turner's product infringed the patent, Turner adequately alleges that Nalco is seeking to broaden the scope of its patent by attempting to exclude non-infringing conduct, which the patent grant does not allow.  The Court therefore finds Turner's proposed amendment adequate to allege the "broadened scope" element of patent misuse.

### iv.   Anticompetitive Effect

Turner also adequately alleges that the manner in which Nalco broadened the scope of the patent grant had an anticompetitive effect.  Turner alleges that Nalco sued Turner with the expectation that Turner would not be able to afford the cost of litigation and would be

1

2

3

4

5

6

7

8

9

10

11

forced to discontinue its product.  Dkt. No. 27 at 9.  Turner further alleges that if Nalco is successful in forcing Turner out of the market, Nalco would have one hundred percent of the market.  *Id.*  At least one district court has found such allegations sufficient to meet the pleading standard for alleging anticompetitive effect.  *VG Innovations, Inc. v. Minsurg Corp.*, No. 8:10-cv-1726-T-33MAP, 2011 WL 1466181, *4 (M.D. Fla. 2011) (finding that plaintiff adequately pled anticompetitive effect because "[plaintiff] alleges that the [defendants] have sought to improperly leverage that patent to prevent the sale of any competing facet fusion allograft for use with any type of surgical technique, including open techniques." (internal quotation marks omitted)).  This Court agrees.  Turner's allegations regarding the effect of bad faith patent litigation on Turner's ability to compete in the market satisfies the pleading standard for alleging anticompetitive effect.

12

13

14

Because Turner's proposed amendment alleges sufficient facts to plead patent misuse, the amendment is not futile.  The Court therefore grants Turner leave to amend its answer to add the patent misuse defense.

15

## IV. CONCLUSION

16

17

18

19

20

21

22

23

For the above stated reasons, Turner's proposed amendment is not futile.  Because the allegations in Turner's proposed amendment, as supplemented by its reply brief, are sufficient to plead patent misuse and attempted monopolization, the Court grants Turner leave to add that defense and counterclaim.  The Court grants Turner leave to add the inequitable conduct defense and *Walker Process* counterclaim if Turner can allege facts with particularity that would show, if true, that the '380 patent was not cumulative of information already before the PTO during prosecution of the '118 patent.  Turner must further amend its answer and counterclaims within 14 days.

24

IT IS SO ORDERED.

25

Date:  February 19, 2014

26

27

_____

Nathanael M. Cousins
United States Magistrate Judge

28