IAN N. FEINBERG (SBN 88324)
ifeinberg@feinday.com
M. ELIZABETH DAY (SBN 177125)
eday@feinday.com
DAVID ALBERTI (SBN 220625)
dalberti@feinday.com
SAL LIM (SBN 211836)
slim@feinday.com
YAKOV ZOLOTOREV (SBN 224260)
yzolotorev@feinday.com
MARC BELLOLI (SBN 244290)
mbelloli@feinday.com
**FEINBERG DAY ALBERTI & THOMPSON LLP**
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Telephone:  650.618.4360
Facsimile:  650.618.4368

Attorneys for Defendant
TURNER DESIGNS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NALCO COMPANY, | CASE NO.  CV 13-02727-NC |
| Plaintiff, | **TURNER DESIGNS, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT** |
| v. | |
| TURNER DESIGNS, INC., | Hearing Date:  September 24, 2014 |
| Defendant. | Time:  2:00 pm |
| | Crtm:  A, 15th Floor |
| | Judge:  Hon. Nathanael Cousins |

**TABLE OF CONTENTS**

**I.  INTRODUCTION** ........................................................................................................ **2**

**II.  FACTS** ......................................................................................................................... **2**

   **A.  The '118 Patent** ...................................................................................................... **2**

   **B.  The Prior Art** ......................................................................................................... **3**

   **C.  Terminology** ........................................................................................................... **3**

**III. THE SUMMARY JUDGMENT STANDARD** ......................................................... **4**

   **A.  Turner's Burden to Obtain Summary Judgment of Non-infringement.** ....................... **4**

   **B.  Turner's Burden to Obtain Summary Judgment of Invalidity.** ................................. **5**

**IV. ARGUMENT** ............................................................................................................... **5**

   **A.  Turner Is Entitled to Summary Judgment of No Induced and No Contributory Infringement for All Sales of the Little Dipper For Which Nalco Provided No Evidence of Direct Infringement** .................................................................................................. **5**

   **B.  Turner Is Entitled to Summary Judgment of No Inducement and No Contributory Infringement Because There Is No Evidence of Direct Infringement of the '118 Patent.** .... **6**

      1.  Direct Infringement of a Method Claim Requires a Single Actor to Perform Every Step, or "Direct or Control" Another Entity to Perform the Steps It Does Not Itself Perform ......... **6**

      2.  There is No Evidence that Any One Actor Performs Both "Providing" Steps ................. **7**

      3.  There is No Evidence that Any Actor Directs or Controls another Actor to Perform the "Providing" Step It Does Not Itself Perform ......................................................... **8**

      4.

                                             .................................................... **11**

      5.  Because There Is No Evidence of Direct Infringement, Turner Is Entitled to Summary Judgment of No Inducement and No Contributory Infringement ......................................... **12**

   **C.  Turner Is Entitled to Summary Judgment of Non-infringement Because There Is No Evidence that Method Step (d) is Performed by Anyone.** .................................................. **13**

      1.  The "Programming" Step Is Not Performed With the Little Dipper .............................. **13**

      2.  Turner Does Not Infringe Under the Doctrine of Equivalents ................................... **14**

   **D.  Turner Is Entitled to Summary Judgment of No Inducement Because There Is No Evidence that Turner Induced Anyone to Perform Method Step (d)** ................................... **16**

-i-

FEINBERG DAY
ALBERTI &
THOMPSON LLP

**E. Turner Is Entitled to Summary Judgment of No Inducement Because There Is No Evidence that Turner Induced Anyone to Perform Method Step (b) of "Providing an Industrial Water System"** ........................................................................................................ 16

**F. Turner Is Entitled to Summary Judgment of No Inducement Because the Undisputed Facts Show that Turner Had a Good Faith Belief That the Little Dipper Does Not Infringe** ........................................................................................................................................ 16

**G. Turner Is Entitled to Summary Judgment of No Contributory Infringement Because Nalco Cannot Show that the Little Dipper has No Substantial Non-infringing Use** .......... 17

**H. Turner is Entitled to Summary Judgment that the '118 Patent Is Invalid as Obvious over the '380 Patent** ............................................................................................................ 18

    1. The Scope and Content of the Prior Art ........................................................................ 19

    2. The Difference Between the Claims and the Prior Art ................................................... 21

    3. The Level of Ordinary Skill in the Art and Motivation to Combine .............................. 22

    4. Objective Indicia of Non-Obviousness ......................................................................... 24

**I. Turner is Entitled to Summary Judgment that the '118 Patent Expires on September 23, 1996.** ....................................................................................................................................... 24

**V. CONCLUSION** ................................................................................................................. 25

FEINBERG DAY
ALBERTI &
THOMPSON LLP

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACCO Brands, Inc. v. ABA Lock Mfrs. Co., Ltd.*,
  501 F.3d 1307 (Fed. Cir. 2007)............................................................................ 7, 16

*Accord Commil USA, LLC v. Cisco Systems, Inc.*,
  720 F.3d 1361 (Fed. Cir. 2013)................................................................................ 17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................................... 5

*Aristocrat Technologies Australia Pty Ltd. v. Int'l Game Technology*,
  709 F.3d 1348 (Fed. Cir. 2013).................................................................................. 9

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
  365 U.S. 336 (1961)................................................................................................... 12

*Baldwin Graphic Systems, Inc. v. Seibert, Inc.*,
  515 F.3d 1338 (Fed. Cir. 2008)................................................................................ 13

*Ball Aerosol and Specialty Container, Inc. v. Limited Brands, Inc.*,
  555 F.3d 984 (Fed. Cir. 2009).................................................................................. 23

*Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*,
  229 F.3d 1120 (Fed. Cir. 2000)................................................................................ 24

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
  576 F.3d 1348 (Fed. Cir. 2009).................................................................................. 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................................... 5

*Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*,
  424 F.3d 1293 (Fed. Cir. 2005)............................................................................. 9, 17

*Deere & Co. v. Bush Hog, LLC*,
  703 F.3d 1349 (Fed. Cir. 2012)................................................................................ 15

*Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.*,
  47 F.3d 1314 (Fed. Cir. 2003)................................................................................... 14

*Desper Prods., Inc. v. QSound Labs, Inc.*,
  157 F.3d 1325 (Fed. Cir. 1998)................................................................................ 14

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
  363 F.3d 1263 (Fed. Cir. 2004)................................................................................ 12

FEINBERG DAY
ALBERTI &
THOMPSON LLP

-iii-

*Ecolab, Inc. v. FMC Corp.,*

    569 F.3d 1335 (Fed. Cir. 2009) ........................................................................... 16

*Eli Lilly & Co. v. Barr Laboratories, Inc.,*

    251 F.3d 955 (Fed. Cir. 2001) ............................................................................... 5

*Exigent Tech v. Atrana Solutions, Inc.,*

    442 F.3d 1301 (Fed. Cir. 2006) ............................................................................. 5

*Festo Corp. v. Shoketsu Kinzoku Koguo Koboshiki Co., Ltd.,*

    493 F.3d 1368 (Fed. Cir. 2007) ........................................................................... 14

*Golden Hour Data Sys., Inc. v. emsCharts, Inc.,*

    614 F.3d 1367 (Fed. Cir. 2010) ...................................................................... 9, 10

*Graham v. John Deere Co.,*

    383 U.S. (1966) ................................................................................................. 18

*Joao Control & Monitoring Systems of California, LLC v. Sling Media, Inc.,*

    2012 WL 3249510 (N.D. Cal. Aug. 7, 2012) ................................................... 9, 10

*Kinetic Concepts Inc. v. Smith & Nephew Inc.,*

    688 F.3d 1342 (Fed. Cir. 2012) ........................................................................... 19

*Lucent Techs, Inc. v. Gateway, Inc.,*

    580F.3d 1301 (Fed. Cir. 2009) ............................................................................. 6

*Mark I Mktg. Corp. v. R.R. Donnelley & Sons Co.,*

    66 F.3d 285 (Fed. Cir. 1995) ............................................................................... 14

*Met–Coil Systems Corp. v. Korners Unlimited Inc.,*

    803 F.2d 684 (Fed. Cir. 1986) ............................................................................. 12

*Meyer Intellectual Properties Ltd. v. Bodum, Inc.,*

    690 F.3d 1354 (Fed. Cir. 2012) ............................................................................. 6

*Move, Inc. v. Real Estate Alliance Ltd.,*

    709 F. 3d 1117 (Fed. Cir. 2013) ............................................................................ 9

*Muniauction, Inc. v. Thomson Corp.,*

    532 F.3d 1318 (Fed. Cir. 2008) ............................................................................. 6

*Osram Sylvania, Inc. v. American Induction Technologies, Inc.,*

    701 F.3d 698 (Fed. Cir. 2012) ............................................................................... 5

*Perfect Web Techs. Inc. v. Info USA, Inc.,*

    587 F.3d 1324 (Fed. Cir.2009) .............................................................................. 5

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.,*

FEINBERG DAY
ALBERTI &
THOMPSON LLP

**TURNER'S MOTION FOR SUMMARY JUDGMENT– CASE NO. CV-13-02727**

491 F.3d 1342 (Fed. Cir. 2007)..................................................................................... 19, 22

*Plantronics, Inc. v. Aliph, Inc.,*

    724 F.3d 1343 (Fed. Cir. 2013)................................................................................. 22

*Ryko Mfg. Co. v. Nu-Star, Inc.,*

    950 F.2d 714 (Fed. Cir. 1991)..................................................................................... 5

*TechSearch, L.L.C. v. Intel Corp.,*

    286 F.3d 1360 (Fed. Cir. 2002)................................................................................... 5

*Uniloc USA, Inc. v. Microsoft Corp.,*

    632 F.3d 1292 (Fed. Cir. 2011)................................................................................... 4

*Vita-Mix Corp. v. Basic Holding, Inc.,*

    581 F.3d  1317 (Fed. Cir. 2009)................................................................................ 17

*Warner-Jenkinson, Inc. v. Hilton-Davis Chemical Co.,*

    520 U.S. 17 (1997)................................................................................................... 15

*Western Union Co. v. Moneygram Payment Systems, Inc.,*

    626 F.3d 1361 (Fed. Cir. 2010)................................................................................ 24

*Wolverine World Wide Inc. v. Nike Inc.,*

    38 F.3d 1192 (Fed. Cir. 1994)................................................................................. 12

**Statutes**

35 U.S.C. § 271(c) ..................................................................................................... 16

35 U.S.C. §103 .......................................................................................................... 17

35 U.S.C. §103(a) ...................................................................................................... 17

35 U.S.C. §154(a) ...................................................................................................... 26

**Rules**

Fed. R. Civ. P. 56(c)(2) ............................................................................................... 5

FEINBERG DAY
ALBERTI &
THOMPSON LLP

-v-

1

## NOTICE OF MOTION

2   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3   PLEASE TAKE NOTICE that on September 24, 2014 at 2 p.m., in the Courtroom of the

4   Honorable Nathanael Cousins of the United States District Court for the Northern District of

5   California located at Courtroom A - 15th Floor, 450 Golden Gate Avenue, San Francisco, CA

6   94102, defendant Turner Designs, Inc. ("Turner") will, through their attorneys of record, move

7   this Court for an order:

8        A.     Granting Turner summary judgment of no inducement and no contributory

9   infringement with respect to each sale of a Little Dipper for which there is no evidence that all the

10   steps of the asserted claims of U.S. Patent No. 6,255,118 ("'118 patent") were performed using

11   that Little Dipper, and for which there is therefore no evidence of direct infringement;

12        B.     Granting Turner summary judgment of no inducement and no contributory

13   infringement even as to the four sales of the Little Dipper for which Nalco offers some evidence,

14   because there is no evidence of direct infringement;

15        C.     Granting Turner summary judgment of no inducement and no contributory

16   infringement because there is no evidence that the (d) "programming" limitation is performed (by

17   any alleged "programming means") on "the detected fluorescence"  "in the industrial water

18   system," as is required by the claim, and therefore there is no direct infringement;

19        D.     Granting Turner summary judgment of no inducement of infringement because

20   there is no evidence that Turner induced anyone to perform the (d) "programming" limitation;

21        E.     Granting Turner summary judgment of no inducement of infringement because

22   there is no evidence that Turner induces anyone to perform the (b) "providing an industrial water

23   system" limitation;

24        F.     Granting Turner summary judgment of no inducement of infringement because the

25   undisputed evidence of Turner's good faith belief that the Little Dipper cannot be used to infringe

26   the '118 patent negates the specific intent required for inducement liability;

27        G.     Granting Turner summary judgment of no contributory infringement Nalco's

28   because there is no evidence that there is no substantial non-infringing use of the Little Dipper;

H.      Granting Turner summary judgment of invalidity for obvious under 35 U.S.C. § 103 because the '118 patent is obvious over Nalco's own U.S. Pat. No. 4,992,380, which was not disclosed in the prosecution of the '118 patent; and

I.      Declaring that the '118 patent expires on September 23, 2016.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the supporting Declarations of Ian N. Feinberg ("Feinberg Decl."), Dr. Larry Russell ("Russell Decl.") and James Crawford ("Crawford Decl.") submitted concurrently, the pleadings and papers on file, and upon such other matters as may be presented to the Court at he time of the hearing.

## I.      INTRODUCTION

There is no triable issue of fact with respect to any of the above-referenced issues, and accordingly Defendant Turner Designs, Inc. ("Turner") moves for an order granting summary judgment as to each of the above.

## II.     FACTS

### A.      The '118 Patent

The '118 Patent is a method patent with one independent claim.  Claim 1, which is reproduced below, has five steps.

1.      A method for monitoring concentrations of chemicals in industrial water systems, the method consisting essentially of the steps of:

a) providing a sold state fluorometer, wherein said fluorometer comprises:

    i)      a solid-state excitation source to direct light in a specified direction, wherein said excitation source is either a light emitting diode, with said light emitting diode emitting light having a wavelength of from about 370 nm to about 500 nm, or a sold state diode laser having an integral photodiode, with said laser emitting light having a wavelength of from about 635 nm to about 1600 nm;

    ii)     a detector receiving the fluorescence from the excitation of the sample and producing an output signal proportional to the quantity of fluorescence received on the detector, wherein said detector is a silicon photodiode;

    iii)    a sample chamber which is a cell, where the entrance to the cell is not covered by a species-specific membrane;

b) providing an industrial water system, wherein a chemical treatment or additive has been added to said industrial water system, wherein a fluorescent tracer is present in said

chemical treatment or additive in a known proportion to said chemical treatment or additive;

c) using said fluorometer to detect the fluorescence of the fluorescent tracer in the industrial water system;

d) programming said fluorometer to produce an output signal proportional to the detected fluorescence; and

e) controlling dosage of chemical treatments or additives to the industrial water system based on the concentration of fluorescent tracer detected by said fluorometer.

Both the cover page and the specification of the '118 patent claim priority to patent application No. 08/719,507 filed on September 23, 1996, although Nalco advised the Patent & Trademark Office ("PTO") during prosecution that the claim of priority was in error.

**B.     The Prior Art**

U.S. Pat. No. 4,992,380 (the "'380 patent") titled "Continuous On-Stream Monitoring of Cooling Tower Water," was filed on October 14, 1988 and issued on February 12, 1991.  It has a common inventor with the '118 patent, John E. Hoots, and a common assignee, Nalco.  The '380 patent was not disclosed or cited in the prosecution of the '118 patent.  The '380 patent is undisputed prior art to the '118 patent.

**C.     Terminology**

A brief review of industry standard terminology will avoid confusion regarding the types of actors in the industrial water system marketplace:

- Industrial Water System or "IWS:" a water system of a facility, such as a university, hotel, hospital, or manufacturing facility, including a cooling water tower and/or boiler. ('118 patent at 7:66-8:2).

-  "IWS Owner:" an owner of an industrial water system.

- Water Treatment System or "WTS:" a system for monitoring and/or treating the water in an industrial water system.  In a WTS using the Little Dipper fluorometer, a WTS also typically includes a "panel" which may have a controller and piping, none of which is manufactured by Turner.

- Water Treatment Company or "WTC:" a company which operates (and typically installs) a Water Treatment System. [1]

According to Nalco's expert,:

██████████████████████████████████████████

---

[1] There are also companies that manufacture water treatment systems, including panels and controllers, who sell to WTCs that use the system to monitor and/or treat the waters in an industrial water system.

[2] Turner asserts that at least step (a) (providing the claimed fluorometer) and step (d)

FEINBERG DAY
ALBERTI &
THOMPSON LLP

**TURNER'S MOTION FOR SUMMARY JUDGMENT– CASE NO. CV-13-02727**

(Expert Report of Dr. Vaughn Astley Regarding Infringement of United States Patent No. 6,255,118 ("Astley Report") at ¶ 101; a true and correct copy of the Astley Report is attached to the Declaration of Ian N. Feinberg in Support of Turner's Motion for Summary Judgment ("Feinberg Decl.") as Exhibit A) Taking Astley's analysis as true for purposes of this motion, the evidence shows that the entities identified below perform the indicated steps of claim 1 of the '118 patent[2]:

| Method Step of the '118 Patent | Entity or Entities Performing Method Step |
|---|---|
| (a) providing the claimed fluorometer | WTCs[3] |
| (b) providing an industrial water system | IWS Owners ("end users" in Astley Report) |
| (c) using said fluorometer to detect | WTCs |
| (d) programming said fluorometer | WTCs[4] |
| (e) controlling the dosage of treatment chemicals | WTCs |

## III.   THE SUMMARY JUDGMENT STANDARD

### A.   Turner's Burden to Obtain Summary Judgment of Non-infringement.

"To prove infringement, [Nalco] bears the burden of proof to show the presence of every

_____

[2] Turner asserts that at least step (a) (providing the claimed fluorometer) and step (d) (programming the claimed fluorometer) are not performed by anybody.
[3] Nalco apparently asserts that Turner also provides the fluorometer, but whether it does or not is irrelevant to this motion.
[4] Nalco has previously alternatively asserted that Turner "programs" the fluorometer when it manufactures the Little Dipper. Should Nalco rely on this alternative theory, summary judgment of no infringement is appropriate because it is uncontested that Turner manufactures the Little Dipper, but does not perform the other claimed steps. The split "infringement" means that there is no direct infringer and no liability.

element or its equivalent in the accused [method]." *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1301 (Fed. Cir. 2011). Thus, on summary judgment of non-infringement, Turner need not produce any evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 224 (1986). Rather, Turner satisfies its burden by revealing Nalco's lack of evidence. See *Exigent Tech v. Atrana Solutions, Inc.,* 442 F.3d 1301, 1307-10 (Fed. Cir. 2006); *TechSearch, L.L.C. v. Intel Corp.,* 286 F.3d 1360, 1369-70 (Fed. Cir. 2002). "Summary judgment is proper if 'there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(c)." *Perfect Web Techs. Inc. v. Info USA, Inc.,* 587 F.3d 1324, 1327 (Fed. Cir. 2009).

     **B.**    **Turner's Burden to Obtain Summary Judgment of Invalidity.**

To obtain summary judgment of invalidity, Turner must show by clear and convincing evidence that no reasonable trier of fact could find the '118 patent not invalid. *Eli Lilly & Co. v. Barr Laboratories, Inc.*, 251 F.3d 955, 692 (Fed Cir. 2001); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "'[A] district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries into obviousness present no genuine issue of material facts.'" *Osram Sylvania, Inc. v. American Induction Technologies, Inc.*, 701 F.3d 698, 704 (Fed. Cir. 2012), *quoting Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 216 (Fed. Cir. 1991).

**IV.**   **ARGUMENT**

     **A.**    **Turner Is Entitled to Summary Judgment of No Induced and No Contributory Infringement for All Sales of the Little Dipper For Which Nalco Provided No Evidence of Direct Infringement**

Nalco has proffered no evidence whether, or by whom, any step of claim 1, other than step (a), is performed with any Little Dipper other than the four Little Dipper sales on which Astley specifically opines.[5] (*See* Astley Report ¶¶ 103-124). Thus, there is no evidence that could allow a trier of fact to find that every step of claim 1 was performed by anyone using a Little Dipper except with respect to those four Little Dipper sales, much less that all the steps were performed by the same actor or under that actor's direction or control. Accordingly, Turner is

---

[5] The four are ██████████████████████████████████████████████████
████████████████ ven as to those sales, there is no evidence of direct infringement and therefore no liability for inducement or contributory infringement. See Section IV(B), *supra*.

Feinberg Day
Alberti &
Thompson LLP

entitled to summary judgment of no inducement or contributory infringement with respect to any sale of the Little Dipper other than the four described by Astley. *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 576 F.3d 1348, 1358 (Fed. Cir. 2009).   ("However, now only a method claim is at issue; thus, St. Jude stands to benefit from limiting damages to devices that actually practice the method.").

Thus, even if the Court finds that there is a triable issue of fact regarding the four sales of Little Dippers discussed below, for which Nalco at least attempts to identify parties who perform each method step, Turner nonetheless is entitled to summary judgment of non-infringement as to every other sale of the Little Dipper, for which there is no evidence that the Little Dipper was used in a direct infringement of the method.

**B.     Turner Is Entitled to Summary Judgment of No Inducement and No Contributory Infringement Because There Is No Evidence of Direct Infringement of the '118 Patent**

The undisputed evidence is that no single entity performs every step or "directs or controls" anyone else to perform the steps it does not itself perform.  Thus, as a matter of law, there is no direct infringement.

**1.     Direct Infringement of a Method Claim Requires a Single Actor to Perform Every Step, or "Direct or Control" Another Entity to Perform the Steps It Does Not Itself Perform**

"[D]irect infringement of a method claim requires that every step of the claimed method has been practiced."  *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed Cir. 2012), *citing Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009).  And every step must be performed by a single actor, or under the "direction or control" of that actor. *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-1330 (Fed. Cir. 2008).

Steps (a) and (b) begin with the verb "providing."  "Providing" means "furnishing or supplying."  *See* http://dictionary.reference.com/browse/providing, http://dictionary.cambridge.org/dictionary/american-english/provide_1?q=providing, a true and correct copy of which is attached as Exhibit B to the Feinberg Decl.; *Meyer Intellectual Properties Ltd. v. Bodum, Inc*., 690 F.3d 1354, 1369 (Fed. Cir. 2012)(construing the term

"providing" to mean "furnishing, supplying, making available, or preparing"). Thus, the two "providing" steps require making available, furnishing or supplying (a) the claimed fluorometer and (b) the claimed industrial water system.

### 2. There is No Evidence that Any One Actor Performs Both "Providing" Steps

There is no evidence that any one actor performs both limitation (a) ***providing*** the claimed fluorometer[6], and limitation (b) ***providing*** an industrial water system. All the evidence is to the contrary. In particular, while Turner and a WTC may each provide a fluorometer as required by limitation (a) (albeit not the claimed fluorometer), the undisputed evidence is that neither Turner nor any WTC also performs the second "providing" step of providing an industrial water system.[7] **(**Astley Report ¶ 18).

The opposite is also true. IWS Owners (owners of industrial water systems) who do perform the second providing step (b), providing an industrial water system, do not also perform the first providing step (a), providing a solid state fluorometer. (Astley Report ¶ 19)**.** Instead, the IWS Owners contract with WTCs to provide water treatment services, and it is up to the WTCs to furnish a fluorometer as part of the provided services. (*Id.*)

Because there is no direct infringer where a WTC provides services to an IWS Owner, Astley writes, without any evidentiary citation, that "[a]t times, Owners ***may*** directly install, maintain, and/or service these water treatment systems themselves." (Astley Report ¶ 18, (*emphasis added*). But, "may" is not "does" and speculation is not evidence. The absence of evidence that any IWS Owner does in fact "directly install, maintain, and/or service those water treatment systems themselves" dooms any theory of direct infringement. *ACCO Brands, Inc. v.*

_____

[6] ██████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

A WTC treats an industrial water treatment system in the same way that a pool boy treats a swimming pool, and no more provides an industrial water system than a pool boy provides a swimming pool.

**TURNER'S MOTION FOR SUMMARY JUDGMENT– CASE NO. CV-13-02727**

*ABA Lock Mfrs. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) ("Hypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement.")

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████   But that argument is precluded by the '118 patent, which differentiates between industrial water systems and treatment systems.

First, claim element (b) recites the step of "providing an industrial water system" and a separate clause "wherein a chemical treatment or additive has been added ***to*** said industrial water system," indicating that an industrial water system is distinct from any treatment that is added *to* it. '118 patent at 12:4-6 (*emphasis added*). Second, the Background of the Invention makes it clear that an "industrial water system" refers to the industrial water system already owned by the IWS Owner, not something provided by a WTC:

> A need, therefore, exists for an improved instrument constructed as an all solid-state fluorometer including a system and method for the use of such a fluorometer for monitoring the concentration of fluorescent tracer molecules particularly in industrial water systems.

'118 patent at 2:30-35.

In addition, "The Description of the Preferred Embodiments" states that "[t]he use of a solid-state diode laser or light-emitting diode fluorometer to monitor ***cooling water, boiler, or other industrial water systems***, has several advantages over known systems that use conventional fluorometers." '118 patent at 7:66-8:2 (*emphasis added*). This passage makes it clear that an industrial water system is a cooling water system or boiler system ***being treated*** (provided by IWS Owners like ██████████████████████ (Astley Report ¶ 124), and not an industrial water ***treatment*** system provided by WTCs like ████████████ ████████ (Astley Report ¶ 124) which use the Little Dipper.

> **3.   There is No Evidence that Any Actor Directs or Controls another Actor to Perform the "Providing" Step It Does Not Itself Perform**

To establish "direction or control" sufficient to make an actor liable as a direct infringer

for method steps performed by another, it is not enough that the actor contracts for services that are performed by practicing the steps of a claimed method.  "[T]he patent holder must prove that one party *exercised control over the entire process* such that all steps of the process can be attributed to the controlling parties, i.e., the '*mastermind*."  *Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 614 F.3d 1367, 1381 (Fed. Cir. 2010) (*emphasis added*).  "Courts faced with a divided infringement theory have also generally refused to find liability where one party did not control or direct *each* step of the patented process."  *Move, Inc. v. Real Estate Alliance Ltd.*, 709 F. 3d 1117, 1122 (F.3d Cir. 2013), *quoting BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007) (*emphasis added*).

"Plaintiff's alleged manufacturer-customer relationship does not suffice under such a standard."  *Joao Control & Monitoring Systems of California, LLC v. Sling Media, Inc.*, 2012 WL 3249510 at \*6 (N.D. Cal. Aug. 7, 2012).  "To allow a vicarious liability claim based solely on a customer relationship, as Plaintiff alleges here, would run afoul of the Federal Circuit's warning in BMC that 'expanding the rules governing direct infringement to reach independent conduct of multiple actors would subvert the statutory scheme for indirect infringement.'"  *Id.* \*5

> Absent an agency relationship between the actors or some equivalent, however, a party that does not commit all the acts necessary to constitute infringement has not been held liable for direct infringement even if the parties have arranged to "divide" their acts of infringing conduct for the specific purpose of avoiding infringement liability. *See Cross Med. Prods.*, 424 F.3d at 1311 (no liability for direct infringement if the party that is directly infringing is not acting as an agent of, or at the direction of, the accused infringer).

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012), *reversed on other grounds*, \_\_U.S. \_\_, 134 S.Ct. 2111, 2118 (June 2, 2104) (citation omitted). "One party's direction or control over another in a principal-agent relationship or like contractual relationship operates as an exception to this general rule [that a single actor must perform every step of a method], *but absent that agency relationship or joint enterprise, we have declined to find one party liable for another's actions*."  *Aristocrat Technologies Australia Pty Ltd. v. International Game Technology*, 709 F.3d 1348, 1363 (Fed. Cir. 2013) (*emphasis added*).

Here, there is no evidence that any entity performing claim step (a), providing the claimed fluorometer, directs or controls any other entity to perform step (b), providing an industrial water system, or is in an agency or joint venture relationship with the other entity (Astley Report ¶ 18-20, 83, 84).

███████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████. (See Feinberg Decl. at ¶¶7-15, and contracts and third party declarations attached thereto as Exhibits C - K)

There is also no evidence that in performing its contractual obligation to maintain an IWS Owner's pre-existing industrial water system, any WTC follows step-by-step instructions from an IWS Owner. █████████████████████████████████████

████████████████████████████████████

(Feinberg Decl. at ¶¶ 7-15.  <u>In sum, there is no evidence that any IWS Owner (who performs the step of (b) providing an industrial water system)</u> *(*Astley Report ¶ 18-20, and 83, 84) also <u>performs step (a) (providing a fluorometer)</u>.   Thus there is no evidence that any IWS Owner "***exercised control over the entire process.***"  See *Golden Hour Data Sys., Inc,* 614 F.3d 1367, 1381 (*emphasis added*).

████████████████████████████████████

████████████████████████████████████ (See Feinberg Decl. at ¶¶ 7-15)  "Plaintiff's alleged manufacturer-customer relationship does not suffice [for infringement]." *Joao Control & Monitoring Systems of California, LLC ,* 2012 WL 3249510 at *6.   Since the undisputed evidence is that no WTC performs step (b) by providing an industrial water system, or directs or controls any IWS Owner or other entity to perform that step[8], there is no direct infringement.

Because there is no evidence that any actor which performs some but not all of the steps

---

[8] Of course there is also no evidence that Turner "directs or controls" any IWS Owner to provide an industrial water system.

**TURNER'S MOTION FOR SUMMARY JUDGMENT– CASE NO. CV-13-02727**

of claim 1 directs or controls another actor to perform the steps it does not itself perform, there is no evidence of direct infringement.

**4.      Even if Nalco Asserts that Americold or Amvac Each Provided Both a** ████████

11

**TURNER'S MOTION FOR SUMMARY JUDGMENT– CASE NO. CV-13-02727**

██████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████

**5.     Because There Is No Evidence of Direct Infringement, Turner Is Entitled to Summary Judgment of No Inducement and No Contributory Infringement**

Because there is no evidence that any entity, Turner, a WTC or an IWS Owner, performs (a) both "providing" steps of claim 1, or (b) both of those steps and the "programming" step, or (c) directs or controls any entity to perform all the steps it does not itself perform, there is no direct infringement.  And because direct infringement is required for both contributory infringement, *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961),  and inducement of infringement, *Limelight Networks, Inc. v. Akami Technologies, Inc.*, __U.S. __, 134 S.Ct. 2111, 2118 (June 2, 2104), there is also no indirect infringement.

"Absent direct infringement of the claims of a patent, there can be neither contributory infringement nor inducement of infringement." *Met–Coil Systems Corp. v. Korners Unlimited Inc.,* 803 F.2d 684, 687 (Fed. Cir. 1986); *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement.")

Finally, because there is no direct infringement of the only independent claim (claim 1), there can be no direct infringement of the asserted dependent claim (claim 2).  *Wolverine World Wide Inc. v. Nike Inc.,* 38 F.3d 1192, 1199 (Fed. Cir. 1994).  Accordingly, Turner is entitled to summary judgment of no inducement or contributory infringement of asserted claim 2 as well.

**C.     Turner Is Entitled to Summary Judgment of Non-infringement Because There Is No Evidence that Method Step (d) is Performed by Anyone.**

Limitation (d) requires "programming said fluorometer to produce an output signal proportional to ***the detected fluorescence***" (*emphasis added)*.  As a matter of claim construction law, "***the detected fluorescence***" requires "antecedent basis." *See Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1343 (Fed. Cir. 2008) (citing § 2173.05(e) of the Manual of Patent Examining Procedure (MPEP)).  The only antecedent basis for  "***the detected fluorescence***" is found in limitation 1(c), "using said fluorometer to detect the fluorescence of the fluorescent tracer in the industrial water system." Thus, limitation (d) requires "programming said fluorometer to produce an output signal proportional to the detected [fluorescence of the fluorescent tracer in the industrial water system]."  In other words, the programming step must be performed ***in the industrial water system*** based on the already detected fluorescence of the tracer in that system.

### 1.     The "Programming" Step Is Not Performed With the Little Dipper

Uncontested evidence establishes that the Little Dipper is calibrated (which Nalco contends meets the "programming" limitation) ***in a bucket of water***, not in the waters of an industrial water system as required by limitation (d).   As the Little Dipper manual makes clear at Section 3.1, the calibrating is done in two steps:  In the first step, the Little Dipper is placed in a bucket of water containing no fluorescent tracer (also called a "fluorophore") at all so that its "zero" level can be set.  In the second step, the Little Dipper is placed in a bucket of water containing a "Turner Designs prepared calibration standard" so that its maximum level is set.[10] (A true and correct copy of the Little Dipper Manual (TURNER0001124-40) is attached as Exhibit L to the Feinberg Decl.)  Accordingly, even if calibration is "programming" (which Turner contests), the Little Dipper is ***never*** "programmed" to produce an output signal proportional to the ***detected fluorescence of the fluorescent tracer in the industrial water system*** because the industrial water containing the fluorescent tracer is never used in the calibration or

---

[10] A "home-made" "solution using your flurophore of interest that represents the maximum concentration you intend to measure" can be used instead of the Turner Designs prepared calibration standards. Little Dipper Manual at Section 3.1(8)

Feinberg Day
Alberti &
Thompson LLP

**TURNER'S MOTION FOR SUMMARY JUDGMENT– CASE NO. CV-13-02727**

"programming" step and because calibration is done with the Little Dipper in a bucket of water, and not when it installed in any industrial water system.  (Russell Decl. at ¶¶ 21, 30); Astley Report at ¶ 90)  In fact, the Little Dipper Manual states that the calibration or "programming" step *cannot* use the water in the industrial water system because in the first step the user must "make sure that it [the water in the bucket] does not contain any fluorophore" (Manual at 3.1(3)), and in the second step the water in "the same bucket" must contain the maximum concentration of the fluorophore that could be measured (Manual at 3.1(8)).  In neither instance can the water in the industrial water system be used, and in neither case is the alleged "programming" done *in the industrial water system* based on the already detected fluorescence of the tracer in that system as the claim requires.  (Russell Decl. at ¶ 21)[11] Thus, step(d) is not performed by any actor and there is no direct infringement of claim 1.

### 2. Turner Does Not Infringe Under the Doctrine of Equivalents

#### a) The Doctrine of Equivalents Is Not Available for the '118 Patent Because of Prosecution History Estoppel

The Doctrine of Equivalents is not available for the '118 Patent because of prosecution history estoppel.  Prosecution history estoppel has been applied most often in the context of amendments, such as the one made by Nalco here, to avoid the prior art.  *Festo Corp. v. Shoketsu Kinzoku Koguo Koboshiki Co., Ltd.*, 535 U.S. 722, 735 (2002).  Prosecution estoppel precludes the Doctrine of Equivalents where, as here, the applicant replaces original claims with new claims.  *Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.,* 347 F.3d 1314, 1325 (Fed. Cir. 2003); *Desper Prods., Inc. v. QSound Labs, Inc.,* 157 F.3d 1325, 1340 (Fed. Cir. 1998); *Mark I Mktg. Corp. v. R.R. Donnelley & Sons Co.,* 66 F.3d 285, 291–92 (Fed. Cir. 1995).  This is exactly what happened in *Festo* itself:  "Dr. Stoll also amended the patent application.  He replaced independent claim 1 and dependent claims 4 and 8 with a new independent claim (now claim 1 of the ′125 patent)." *Festo Corp. v. Shoketsu Kinzoku Koboshiki Co., Ltd.*, 493

---

[11] Likewise, if Nalco asserts its alternative theory that Turner performs the "programming" step when it *manufactures* the Little Dipper, such alleged "programming" equally cannot meet the claim because Turner obviously did not have access to water in any industrial water system and the Little Dipper is not installed in any industrial water system during manufacture.

F.3d 1368, 1373 (Fed. Cir. 2007).

Original claims 16-28, 31, 32 and 37 were the only claims pending when they were all rejected over Klainer. (*See* Office Action dated 5/26/00, NAL0049871-NAL0049881, true and correct copies of which pages are attached as Exhibit M to the Feinberg Decl.)   To overcome Klainer, the patentee told the PTO that it was substituting entirely new claims 38-40 (which issued as claims 1-3) and cancelling all of the pending claims. (*See* Amendment and Response dated November 7, 2000, NAL0001801-7, a true and correct copy of which is attached as Exhibit N to the Feinberg Decl.) (*See* also Russell Decl. ¶¶ 55, 56).   Thus, the Doctrine of Equivalents is not available, and Turner is entitled to summary judgment of non-infringement.

> **b)  The Calibration or "Programming" of the Little Dipper Is Not Equivalent to the Claimed "Programming," Even Were The Doctrine of Equivalents Available**

Even if the Doctrine of Equivalents were available, which it is not, the function, way and result of calibrating the Little Dipper are not substantially the same as the (d) "programming" of claim 1. (Russell Decl. at ¶¶ 21, 23).   The Doctrine of Equivalents requires that the function-way-result test be performed on an element-by-element basis. *Warner-Jenkinson, Inc. v. Hilton-Davis Chemical Co.*, 520 U.S. 17, 40 (1997) ("An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element.")  In fact, none of the function, the way nor result of calibrating the Little Dipper is substantially the same as the programming step of limitation (d) at least because "programming" in a water bucket outside of an industrial water system and without any tracer at all or using a maximum tracer concentration in the water bucket cannot be insubstantially different from the claimed "programming" step that is performed in the industrial water system on tracer fluorescence detected in that system. (Russell Decl. ¶¶ 21, 23).   To hold otherwise would impermissibly vitiate the meaning of limitation (d).   *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) ("'Vitiation' is…a legal determination that 'the evidence is such that no reasonable jury could

determine two elements to be equivalent.'"").  In any case, Nalco's expert has not provided any

doctrine of equivalents analysis addressing the issue on which Turner moves.  As a result, there

can be no infringement under the Doctrine of Equivalents, and Turner is entitled to summary

judgment of no inducement and no contributory infringement.

**D.     Turner Is Entitled to Summary Judgment of No Inducement Because There Is No Evidence that Turner Induced Anyone to Perform Method Step (d)**

Even were there evidence that some actor performed method step (d) by "programing" the

Little Dipper "to produce an output signal proportional to ***the detected fluorescence*** [of the

fluorescent tracer in the industrial water system]," Turner could not be liable for inducement

because it never induced anyone to so-program the Little Dipper.  (*See* Section IV(C)(1), supra)

The Little Dipper Manual does not induce anyone to perform the "programming" step of claim 1,

since the Little Dipper teaches away from performing that step (by teaching that calibration be

performed in a water bucket and not when the Little Dipper is installed in any industrial water

system), and there is no evidence that Turner otherwise induced anyone to perform the

"programming " step.  (*Id.*) Thus, Turner is entitled to summary judgment of no inducement of

infringement.

**E.     Turner Is Entitled to Summary Judgment of No Inducement Because There Is No Evidence that Turner Induced Anyone to Perform Method Step (b) of "Providing an Industrial Water System"**

There is no evidence that Turner induced anyone to perform step (a) of "providing an

industrial water system."   Rather, as Astley notes, ███████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

█████████████   (Astley Report at ¶ 101)  Accordingly, IWS Owners provided their industrial

water systems before, and not because of, any action by Turner.  Turner is entitled to summary

judgment of no inducement of infringement.

**F.     Turner Is Entitled to Summary Judgment of No Inducement Because the Undisputed Facts Show that Turner Had a Good Faith Belief That the Little Dipper Does Not Infringe**

To prove that Turner induced infringement, Nalco must show Turner had a specific intent

to encourage direct infringement of the '118 patent.  *Acco Brands, Inc. v. ABA Locks Mfrs. Co.,*

16

**TURNER'S MOTION FOR SUMMARY JUDGMENT– CASE NO. CV-13-02727**

*Ltd.,* 502 F.3d 1307 (Fed. Cir. 2007).   A good faith belief that the induced acts do not constitute patent infringement negates the intent requirement for inducement liability.   *Ecolab, Inc. v. FMC Corp.,* 569 F.3d 1335, 1351, *amended on rehearing on other grounds*, 366 Fed. Appx. 154 (Fed. Cir. 2009); *Accord Commil USA, LLC v. Cisco Systems, Inc.,* 720 F.3d 1361, 1367–68 (Fed. Cir. 2013) (good faith belief of invalidity is evidence that tends to show that accused inducer lacked intent required to be held liable for induced infringement).

It is undisputed that Turner has a good faith belief that the Little Dipper cannot be used to practice the method of the '118 patent at least because Turner believes that it lacks a "chamber which is a cell." (Declaration of Jim Crawford in Suport of Turner's Motion for Summary Judgment ("Crawford Decl.") at ¶¶ 7-9, and emails attached as Exhibit A thereto) ██████

████████████████████████████████████████████████████████

████████████████████████ (Astley Report ¶ 50-55,

¶ 130-150) ████████████████████████████████████████████████

████████████ (Astley Report ¶ 144).  Thus, Turner is entitled to summary judgment of no inducement of infringement because it is undisputed that it did not have the intent to induce infringement.

### G.   Turner Is Entitled to Summary Judgment of No Contributory Infringement Because Nalco Cannot Show that the Little Dipper has No Substantial Non-infringing Use

"In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that the defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that the defendant's components have 'no substantial non-infringing uses.'" *Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (citation omitted).   A non-infringing use is "substantial" when it is not "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.,* 581 F.3d 1317, 1327 (Fed. Cir. 2009).  "The existence of substantial non-infringing uses … defeats [a] claim for contributory infringement as a matter of law. *See* 35 U.S.C. § 271(c)." *Id.* at 1328.  The

issue is not the frequency of the non-infringing use, but rather whether the non-infinging use is substantial. *Id.* at 1327.

Although it is Nalco's burden to prove the absence of substantial non-infringing uses of the Little Dipper, the undisputed evidence establishes that there are at least four. ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████ (Russell Decl. ¶¶ 16, 49).

Second, Little Dipper manual instructs that the alleged "programming" step (calibration of the Little Dipper) should *NOT* be performed in the industrial water system containing the fluorescent tracer as required by step (d) (see Section 4(C)(1), *supra*). Thus, following the instructions in the manual for the Little Dipper is a substantial non-infringing use of the Little Dipper.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████ (Russell Decl. at ¶ 49).

Fourth, there is no evidence that any Little Dipper, other than the four whose use was described by Astley, were used by anyone to practice every step of claim 1. (See Section IV(A), *supra*) And there is no evidence that any Little Dipper, including the four for which Nalco at least attempted to prove that each step of the method was performed by somebody, resulted in an act of direct infringement. (*See* Section IV(B), *supra*) Thus, the predominant, if not the exclusive, use of the Little Dipper is non-infringing. Turner is entitled to summary judgment of no contributory infringement.

## H. Turner is Entitled to Summary Judgment that the '118 Patent Is Invalid as Obvious over the '380 Patent

A patent claim is invalid as obvious under 35 U.S.C. §103 "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406-407 (2007). Obviousness is a question of law based on underlying factual

findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).  A party seeking to invalidate a patent on the basis of obviousness must "demonstrate 'by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so.' " *Kinetic Concepts Inc. v. Smith & Nephew Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012) (citations omitted).  Obviousness may be decided on summary judgment:  "Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR*, 550 U.S. at 427.

### 1.      The Scope and Content of the Prior Art

The undisputed prior art consists at a minimum the admitted prior art identified in the '118 patent and the '380 patent.  (True and correct copies of the '118 patent and the '380 patent are attached as Exhibits O and P, respectively, to the Feinberg Decl.)

### a)      The admitted prior art identified in the '118 patent.

The Summary of the Invention in the '118 patent states:

> The invention detailed in this application is distinct from the prior art, in that it provides for the use of all-solid-state fluorometers for use in monitoring and control of industrial process waters.  While the prior art discloses the use of fluorescent tracer species for monitor and control of industrial processes, it does not teach the use of all-solid-state fluorometers for this purpose.  While additional prior art discloses the design and construction of all-solid-state fluorometers for fluorescent measurements, it does not teach the use of this technology for monitor and control of industrial process.

'118 patent, 4:44-55.  Thus, the quoted paragraph of the '118 patent admits that the only "advance" that the '118 patent made to the prior art was the combination of a prior art "solid-state fluorometer for fluorescent measurement" with a prior art system "for use in monitoring and control of industrial process waters."  "Admissions in the specification regarding the prior art are binding on the patentee for purposes of a later inquiry into obviousness." *PharmaStem*

**TURNER'S MOTION FOR SUMMARY JUDGMENT– CASE NO. CV-13-02727**

*Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1362 (Fed. Cir. 2007).  And principal inventor Alfano testified to the same effect, namely that '118 Patent invented nothing more than the use of a prior art solid state fluorometer  ('118 Patent at 1:25-2:7; Deposition of Dr. Joseph Alfano ("Alfano Depo") at 26:23-28:17; 49:4-15;) to monitor concentrations of prior art fluorescent tracers in a prior art industrial water system.  ('118 Patent at 1:15-24; Alfano Depo at 26:23-28:17; 49:4-15; true and correct copies of the cited pages of the Alfano Depo are attached as Exhibit Q to the Feinberg Decl.)

"The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR*, 550 U.S. at 416.

### b)      The admitted prior art '380 patent.

It is undisputed that the '380 patent, which has a common inventor (John R. Hoots) and a common assignee (Nalco) with the '118 patent, but which was not disclosed in the prosecution of the '118 patent, discloses every limitation of claim 1 of the '118 patent other than limitation (a), providing a solid-state fluorometer.  (Russell Decl. at ¶¶ 57-61, 63-89); (Astley Report at ¶¶ 87, 88, 94, 95, 112-133.)  As stated above, it is also undisputed that sold state fluorometers were

known in the art.

### 2.      The Difference Between the Claims and the Prior Art

For purposes of this motion only, Turner concedes that the only limitation not explicitly disclosed by the '380 patent is the use of a solid-state fluorometer.  While the '380 patent discloses use of the "Turner Designs Model Fluorometer 10" ('380 patent at 14:67-68), it also states that "[i]n general, any fluorometer, with a large pathlength, and excitation and detection in the ultraviolet (UV) light region could be employed."  ('380 patent at 15:5-8)  Thus, the only question is whether it would have been obvious to combine a solid-state fluorometer which is admitted prior art in the '118 patent, with the disclosure of the '380 Patent, including its explicit statement that "any fluorometer" could be employed, to arrive at the claimed invention of the '118 patent.  It was. (Russell Decl. at ¶¶ 63-89).

Nalco may argue that the prior art does not disclose the sub-limitation (a)(i) solid–state excitation source being a light emitting diode (LED) having a wavelength of from about 370 nm to about 500 nm, or the sub-limitation (1)(a)(ii) silicon photodiode detector.  But the '118 patent admits that both limitations were in the prior art.

The "Description of the Prior Art" section of the'118 patent begins by stating that "[i]t is generally know to use diode lasers or light-emitting diodes (LED) as solid-state excitation sources for fluorescence." ('118 patent at 1:27-30)  The '118 patent's description of the prior art goes on to say that "[i]n addition, several more recent publications have dealt with fluorescence measurements using LEDs or diode lasers as excitation sources and silicon photodiodes as detectors." ('118 patent at 1:49-52)  Thus, the '118 patent explicitly admits not only that both LED excitation sources and silicon photodiode detectors were in the prior art, but that the use of them together, as in limitation (a), also was in the prior art.

The only aspect of limitation (a) not explicitly admitted to be prior art in the '118 patent's "Description of the Prior Art" section itself is the (a)(i) limitation of an LED excitation source having a wavelength of from about 370 nm to about 500 nm.  But this too is admitted prior art elsewhere in the '118 patent, where it cites the Araki paper for its disclosure of an overdriven

LED emitting in the claimed spectrum:

> In addition to using light-emitting diodes to emit their specified radiation, in some cases LEDs may be used in an unconventional fashion as novel ultraviolet (UV) light sources.   Blue LEDs operating at higher than the specified forward currents have been found to emit a portion of their optical output in the near-UV region of the spectrum, i.e., *in the range of from about 370 nm to about 500 nm.*

('118 patent at 8:16-22; *emphasis added*)  Thus, the solid-state fluorometer of limitation (a), including all the sub-limitations, are admitted prior art in the '118 patent.  "Admissions in the specification regarding the prior art are binding on the patentee for purposes of a later inquiry into obviousness." *PharmaStem Therapeutics,* 491 F.3d  at 1362.

### 3.    The Level of Ordinary Skill in the Art and Motivation to Combine

#### a)    The Level of Ordinary Skill in the Art

Turner's position is that the level of ordinary skill in the art is "[one with a] bachelor's or equivalent degree or experience in engineering, such as chemical, civil, or electrical engineering, or a similar discipline.  [One] would also have one to three years of practical experience with fluorometry and industrial water systems or equivalent experience with similar projects." (Russell Decl. at ¶ 10).  Nalco's position is substantially identical, although Astley would allow work experience to substitute for education. (Astley Report at ¶ 53).   For purposes of the obviousness determination, there is no difference between the two and a person of ordinary skill in the art would have been motivated to combine the '380 patent with the admitted prior art in the '118 patent to arrive at the claimed invention.  (Russell Decl. at ¶¶ 57-86).

#### b)    Motivation to Combine

There is no triable issue of fact that a skilled artisan would have been motivated to combine the admitted prior art of the'118 patent with the teachings of the '380 patent.  Post *KSR,* the motivation to combine may come from a variety of sources, including:

> explicitly or implicitly in market forces; design incentives; the "interrelated teachings of multiple patents"; "any need or problem known in the field of endeavor at the time of invention and addressed by the patent"; and the background knowledge, creativity, and common sense of the person of ordinary skill.

*Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1354 (Fed. Cir. 2013) (*emphasis added*) (citations omitted).

The motivation to combine the prior art '380 patent with the prior art solid state fluorometer is identified in the '118 patent itself:

> Fluorometers currently being used for industrial process monitoring and control are based on gas-amp excitation sources and photomultiplier tube detectors which require high current, high voltage power supplies. Additionally, these excitation and detection sources do not have the intrinsic reliability of solid-state semiconductor devices.
>
> A need, therefore, exists for an improved instrument constructed as an all solid-state fluorometer including a system and method for the use of such a fluorometer for monitoring the concentration of fluorescent tracer molecules particularly in industrial water system.

('118 patent at 2:25-35)  In addition, Turner's expert Dr. Russell explained how the '380 patent expressly motivated one of ordinary skill to combine its system with a prior art solid state fluorometer:

> One of ordinary skill was familiar with fully solid state fluorometers (such as those taught in the Araki reference and in the '614 patent) would have been motivated to use such a fluorometer with the '380 patent by the disclosure of "any fluorometer, with a large pathlength, and excitation and detection in the ultraviolet (UV) light could be employed."

(See Russell Decl. at ¶ 63).

> A solid state LED fluorometer with emissions in the UV range was also know in the art, as shown by the Araki paper that the'118 patent itself relies on.  The Araki fluorometer was exactly what the '380 patent called for – a solid state fluorometer with emissions in the UV range.  This combination was well within the level of ordinary skill and would not have required undue experimentation.  It is a combination of familiar elements according to know methods that would have yielded predictable results.  Accordingly the combination of the Araki reference and the'380 patent renders the '118 patent obvious.

(See Russell Decl. at ¶¶ 64).

Where all of the limitations of the patent were present in the prior art references, as they are in the '380 patent and the admitted prior art in the '118 patent, and the invention was addressed to a "known problem," as the '118 patent itself admits, "*KSR* ... compels the grant of summary judgment of obviousness."  *Ball Aerosol and Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 993 (Fed. Cir. 2009).  As the combination of prior art elements used according to their established functions to yield predictable  results, the '118 Patent is clearly and convincingly obvious as a matter of law.  *KSR,* 548 U.S. at 417 ("predictable use of prior art

elements according to their established functions" is obvious).

### 4.    Objective Indicia of Non-Obviousness

Nalco will presumably point to "secondary considerations of non-obviousness" to attempt to rebut the clear and convincing evidence that the '118 patent is obvious.  However, there is no "nexus" between the claimed method and commercial success sufficient to even establish a secondary consideration.  *Western Union Co. v. Moneygram Payment Systems, Inc.*, 626 F.3d 1361, 1372-73 (Fed. Cir. 2010).  ("Our case law clearly requires that the patentee must establish a nexus between the evidence of commercial success and the patented invention.")

Simply put, Nalco had 100% of the market for use of fluorometers in industrial water system applications when it used non-solid state fluorometers (exclusively supplied to Nalco by Turner), and had an unchanged 100% of that same market for the next nine years after it substituted solid state fluorometers, until Turner introduced the Little Dipper. (See Crawford Decl. at ¶¶ 3- 6)  Thus, Nalco cannot show a "nexus" between the invention claimed in the '118 patent and its sales or market share, much less, as required, that  "that the sales were a direct result of the unique characteristics of the *claimed invention.*"  *Western Union,* 626 F.3d at 1372-73.  There are no relevant secondary considerations to consider, and the '118 patent is obvious over the '380 patent.

Moreover, secondary considerations of non-obviousness cannot overcome such strong evidence of obviousness as is established here. *See Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1131 (Fed. Cir. 2000) (holding that failure to consider secondary considerations was harmless where strong evidence of obviousness was presented).  Even if there were relevant secondary considerations, they cannot overcome the overwhelming evidence of obviousness.  The '118 patent simply uses a prior art solid state device in a frequency range disclosed by the Araki reference cited in the '118 patent as prior art, to perform a prior art method disclosed in the '380.  Accordingly, Turner is entitled to summary judgment of invalidity for obviousness.

### I.    Turner is Entitled to Summary Judgment that the '118 Patent Expires on September 23, 1996.

The face page (at 62) and the specification (at 1:8-11) of the '118 patent claim priority to application No. 08/719,507 filed on September 23, 1996.  While Nalco told the PTO in its Amendment and Response of dated November 7, 2000 that its claim of priority to application of No. 08/719,507 was due to Nalco's clerical error (NAL0001804, attached as Exhibit S to the Feinberg Decl.), that is not sufficient as a matter of law to disclaim its claim of priority to application No. 08/719,507.  Instead, had Nalco wanted to disclaim its claim of priority, it was required to amend the specification or submit a new application data sheet, Manual of Patent Examining Procedure ("MPEP") at 201.11(G), neither of which it did   (A true and correct copy of MPEP Section 2011(G) is attached as Exhibit T to the Feinberg Decl.)  Were a patentee allowed to disclaim a claim of priority by just telling the PTO in prosecution that it had not properly claimed priority, without amending the specification or submitting a new application data sheet, the public would be deceived as to when the patent would expire and when the public would be free to use the claimed invention.  Thus, Turner is entitled to summary judgment that the '118 patent expires on September 23, 2016, 20 years after the filing date of application No. 08/719,507, pursuant to 35 U.S.C. § 154(a)(2).

## V.    CONCLUSION

For all the foregoing reasons, Turner is entitled to summary judgment that it is not liable for inducing or contributing to the infringement of the '118 patent, that the '118 patent is invalid as obvious over the prior art, and that the '118 patent expires on September 23, 2016.

August 22, 2014                          Respectfully Submitted,

                                         FEINBERG DAY ALBERTI & THOMPSON LLP

                                         By:  /s/ Ian N. Feinberg
                                              Ian N. Feinberg